26 C.C.P.A.(Customs)

### LAMBORN & CO., Inc., v. UNITED STATES.

### Cust. App. No. 4198.

Court of Customs and Patent Appeals.
May 29, 1939.

Alfred C. B. McNevin, of New York City (Tompkins & Tompkins, J. Stuart Tompkins, and Allerton Tompkins, all of New York City, of counsel, and Joseph J. Corriston, of New York City, on the brief), for appellant.

Webster J. Oliver, Asst. Atty. Gen. (Charles D. Lawrence, Sp. Asst. to Atty. Gen.) for the United States.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a judgment of the United States Customs Court (Second Division) dismissing, for lack of jurisdiction, two protests filed by appellant with the collector at the port of New York.

Appellant imported two shipments of sugar from Cuba at the port of New York, upon which the collector assessed, in addition to the regular duties, a so-called "compensating tax" under the provisions of section 15(e) of the Agricultural Adjustment Act of May 12, 1933, 7 U.S.C.A. § 615(e).

The protests did not involve the regular duties assessed against the sugar under the Tariff Act of 1930, 19 U.S.C.A. 1001 et seq., but were directed only against the assessment of said compensating tax, alleging that said Agricultural Adjustment Act was unconstitutional. Before the Customs Court the protests were consolidated for the purpose of trial.

Appellant submitted the case upon the record, whereupon the Government moved to dismiss the protests for lack of jurisdiction of the Customs Court to hear and determine the issues raised in said protests. This motion was granted upon the authority of our decision in the case of United States v. Marshall Field & Co., Inc., 94 F.2d 210, 25 C.C.P.A., Customs, 308, T. D. 49422, and the case of Anniston Manufacturing Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143. Judgment was entered accordingly, from which appellant has appealed to this court.

Appellant's counsel in their brief state: "As there were no disputed facts or findings in the Court below, the Government's motion for the dismissal of these protests raised but a single question of law, viz: the jurisdiction of the Court to entertain and determine protests arising under the Agricultural Adjustment Act, and its amendments, which Act was declared unconstitutional by the United States Supreme Court in United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

"Because of the deference and respect unhesitatingly yielded by the Court below and the undersigned to the final decisions of this Court, and because the same issue of law is presented as was involved in the Marshall Field case, supra, it is the task of the appellant here to present this appeal by way of an application for a reargument. Such a method requires the appellant to urge upon this learned Court principles of law not presented on the prior appeal, or, if presented, not deemed controlling."

Appellant before us raised the single question of the constitutionality of title VII of the Revenue Act of 1936, 7 U.S. C.A. §§ 623 note, 644 et seq., relating to suits for the recovery of taxes levied under said Agricultural Adjustment Act. That question was involved also in the case of United States v. Marshall Field & Co., Inc., supra, wherein we held said title VII to be a valid enactment; but appellant here raises a ground of unconstitutionality not there urged, viz., that while the Government could lawfully withdraw its consent to be sued in any court of the United States for the recovery of compensating taxes, it could not at the same time grant immunity to Collectors of Customs from personal suits against them for the recovery of such taxes, and that, inasmuch as section 910 of said title VII, 7 U.S.C.A. § 652, does purport to grant such immunity, all of said title, in so far as it relates to compensating taxes, must be held to be unconstitutional for the reason that Congress could not deprive appellant of all remedies without violating the Fifth Amendment of the Constitution, U.S.C.A.

As we understand appellant's contention, it is that if section 910 of said title VII be found unconstitutional, in so far as it purports to grant immunity from suit to Collectors of Customs, all of said title, in so far as it relates to compensating taxes, must likewise be held to be unconstitutional, upon the familiar principle that a provision in a statute, inherently unobjectionable, cannot be deemed separable

unless it appears that, standing alone, legal effect can be given to it, and that the legislature intended the provision to stand in case others included in the act and held bad should fall. Dorchy v. State of Kansas, 264 U.S. 286, 44 S.Ct. 323, 68 L.Ed. 686.

Inasmuch as the Agricultural Adjustment Act and various provisions of said title VII of the Revenue Act of 1936 were reviewed and considered by us in said Marshall Field case, supra, and the case at bar is in effect a reargument of that case, we will here quote and consider only sections 905 and 910 of said title VII, 7 U.S.C.A. §§ 647, 652:

"Sec. 905 [§ 647]. Jurisdiction of courts.

"Concurrent with the Court of Claims, the District Courts of the United States (except as provided in section 906 [648] of this title) shall have jurisdiction of cases to which this title applies, regardless of the amount in controversy, if such district courts would have had jurisdiction of such cases but for limitations under the Judicial Code, as amended, on jurisdiction of such courts based upon the amount in controversy. The United States Customs Court shall not have jurisdiction of any such cases."

"Sec. 910 [§ 652]. Liability of collectors.

"No collector of internal revenue or customs, or internal revenue or customs officer or employee, shall be in any way liable to any person for any act done by him in the assessment or collection of any amount as tax under the Agricultural Adjustment Act [this chapter], or for the recovery of any money exacted by or paid to him and paid into the Treasury, in performance of his official duties under the provisions of such Act, or if such collector or officer acted under the direction of the Secretary or other proper officer of the Government."

The Government makes two contentions herein:

1. That the protests are insufficient to raise the constitutional question now presented for the first time by appellant in its brief.

2. That our decision in the Marshall Field case, supra, is stare decisis with respect to the question herein involved.

With respect to the alleged insufficiency of the protests, we are clear that

appellant was not required to raise the question of the constitutionality of said title VII therein. A protest is a statutory pleading, and under section 514 of the Tariff Act of 1930, 19 U.S.C.A. § 1514, the protest must be directed solely to decisions of the collector with respect to the matters set forth in said section. In the case at bar the collector made no decision with respect to said title VII, for it was not in existence at the time of the liquidation of the entries herein involved. At the time the protests were filed they complied with the statute, and apparently, if it had not been for subsequent legislation, appellant would have been entitled to maintain the suit before the Customs Court.

The Customs Court acquired jurisdiction when the protests were filed with it, and if said title VII is a valid enactment the Customs Court was divested of any jurisdiction to hear and determine the same. Under these circumstances appellant was not required to amend its protests. We are of the opinion, therefore, that the question of the constitutionality of said title VII, in so far as it relates to compensating taxes, is properly before us.

It is well established that a statute should be construed, if possible, so as to sustain its constitutionality. In the case of St. Louis Southwestern Railway Company v. State of Arkansas, 235 U.S. 350, 35 S.Ct. 99, 105, 59 L.Ed. 265, it was stated: "* * * No canon of construction is better established or more universally observed than this: that if a statute will bear two constructions, one within and the other beyond the constitutional power of the law-making body, the courts should adopt that which is consistent with the Constitution, because it is to be presumed that the legislature intended to act within the scope of its authority. [Citing cases.]"

In the case of Anniston Manufacturing Company v. Davis, supra, the court stated [301 U.S. 337, 57 S.Ct. 823]: "* * * We apply the familiar canon which makes it our duty, of two possible constructions, to adopt the one which will save and not destroy. We cannot attribute to Congress an intent to defy the Fifth Amendment or 'even to come so near to doing so as to raise a serious question of constitutional law.' [Citing cases.]"

Appellant admits that if Congress has, in said title VII, provided a remedy for the recovery of compensating taxes by suit in the Court of Claims or in the district

courts, or both, then said title VII is valid and constitutional. If such remedy is provided it will be unnecessary for us to consider the power of Congress to divest an importer who has paid compensating taxes of all judicial remedies for the recovery thereof.

This same question with respect to title VII was presented to the Supreme Court of the United States in the case of Anniston Manufacturing Company v. Davis, supra, but that court there found it unnecessary to pass upon the same for the reason that, as to processing and floor stocks taxes embraced in the Agricultural Adjustment Act, which were the only taxes there involved, the procedure set out in title VII complied with constitutional requirements.

It was also stated in said case that section 905 of title VII provides for the jurisdiction of the district courts, concurrent with the Court of Claims, for the recovery of amounts collected as compensating taxes. However, as observed in our decision in the Marshall Field case, supra, that question was not before the court and its expression in that respect must be regarded as obiter.

In our decision in said Marshall Field case, supra, we said:

"If section 905 be regarded as unambiguous, to be construed without the aid of its legislative history, it must be held that the Government, by virtue of its provisions, has either withdrawn its consent to be sued for the recovery of amounts paid as compensating taxes, or that jurisdiction of such suits is vested in the Court of Claims, and possibly also in the district courts of the United States. There is certainly nothing ambiguous in the provision of section 905 reading, 'The United States Customs Court shall not have jurisdiction of any such cases.'

"If jurisdiction over cases for the recovery of amounts paid as compensating taxes is, by section 905, vested in either the Court of Claims or the district courts of the United States, or both, then the motion of the Government to dismiss the protest in the case at bar should have been granted by the Customs Court. If, on the other hand, such jurisdiction is not vested in said courts, then Congress has conferred upon no court jurisdiction over such cases, and for that reason the Customs Court should have dismissed appellee's protest,

unless it should be held that section 905 is unconstitutional because no judicial remedy has been provided for the recovery of amounts paid as compensating taxes."

In that case we did not find it necessary, upon the issues before us, to pass upon the question of whether section 905, 7 U.S.C.A. § 647, should be construed as conferring jurisdiction upon the Court of Claims or the district courts, or both, to hear and determine suits for the recovery of compensating taxes. In the case at bar, in view of the issue raised by appellant, we deem it at least desirable, if not necessary, to pass upon this question.

Appellant's counsel admit that the language in section 905 reading, "The United States Customs Court shall not have jurisdiction of any such cases.", could have application to none other than compensating taxes, for the Customs Court never had jurisdiction of suits for the recovery of any other taxes assessed under the Agricultural Adjustment Act. This fact strongly indicates that Congress intended to confer jurisdiction upon other courts named in the section over suits for the recovery of compensating taxes.

We think that anyone reading section 905 must feel uncertain as to the real intention of Congress in its enactment. While it is true that, except for the last sentence divesting the Customs Court of jurisdiction, one would get the impression that it was intended merely to enlarge the jurisdiction of the district courts, regardless of the amount in controversy, but limited to the same class of cases of which such courts had theretofore had jurisdiction, nevertheless, in view of the last sentence, the section also has another possible construction, viz., that the "Court of Claims * * * shall have jurisdiction of cases to which this title applies * * ," and that the district courts shall have concurrent jurisdiction with the Court of Claims of all such cases, regardless of the amount in controversy, if such district courts would have had jurisdiction of such cases but for the limitations in the Judicial Code relating to the amount in controversy.

It does not seem reasonable to suppose that Congress intended to provide a judicial remedy for the recovery of processing taxes and floor stocks taxes, and not for the recovery of compensating taxes,

and the statute should not be so construed unless its plain wording so requires.

In view of the two possible constructions above stated, it is our opinion that section 905 is sufficiently ambiguous to warrant a resort to the legislative history of the section to aid in ascertaining the legislative intent in its enactment.

In our decision in the Marshall Field case, supra, we reviewed the legislative history of title VII as follows:

"Title 7 of the Revenue Act of 1936 was reported by the Finance Committee of the Senate as an amendment to H.R. 12395, which became said Revenue Act of 1936. The House of Representatives accepted section 905 without modification, and in fact all of title VII as reported by the Senate Committee was agreed to in substantially the form in which it now appears in said revenue act. We quote from said Senate Committee report the following:

"'* * * The invalidation of the Agricultural Adjustment Act by the decision in the Butler case has given rise to possible claims for approximately $960,000,000 which has been collected under that act. This amount consists of approximately $850,000,000 in processing taxes; $98,000,000 in floor-stocks taxes; and $12,000,000 in compensating taxes. * * *

"'The revision of the provisions of section 21(d) contained in title VII adheres to the fundamental principle of equity applicable in respect to claims for refund, namely, that the claimant secure a refund only with respect to the amount of tax of which he bore the economic burden. However, the procedure in the handling of these claims has been modified so as to diminish insofar as possible the administrative burden involved in passing on them. The greater number of claims which may be filed relate to claims for *compensating* taxes and floor-stocks taxes. In these cases the issue of fact as to whether or not the claimant bore the economic burden of the tax will be relatively simple. The bill therefore proposes that such claims shall be handled in the same manner as any other claims for refund under existing law. The claimant will merely present his claim to the Bureau of Internal Revenue, and it will be passed on without formal hearing. If the claimant is dissatisfied with the decision of the Commissioner, he will then have recourse to the district court or the Court of Claims. [Italics ours.]

\* \* \* \* \* \*

"'Section 902 adheres to the basic principle that no refunds may be made of amounts collected under the Agricultural Adjustment Act, except to the extent to which the claimant establishes to the satisfaction of the Commissioner of Internal Revenue, or to the satisfaction of the trial court, as the case may be, that he bore the economic burden of such amounts. The reference to the trial court is necessary, since *in all cases* where the claimant is dissatisfied with the determination of the Commissioner, except with respect to processing taxes, as defined in section 913, the claimant *will have recourse to the district courts or the Court of Claims.* Whether the claim is acted on by the Commissioner or such courts, the burden of proving that the tax was not passed on will be on the claimant. [Italics ours.]

\* \* \* \* \* \*

"'Section 905 contains provisions now incorporated in section 21(d), relating to the jurisdiction of the district courts. *The district courts and the Court of Claims will have jurisdiction of all cases relating to amounts collected under the Agricultural Adjustment Act, except amounts collected as processing taxes.* With respect to processing taxes, a special procedure is provided in section 906 of the bill. The $10,000 limitation on the jurisdiction of the district courts which would otherwise be applicable, is dispensed with in order to relieve the Court of Claims of congestion which would otherwise result. [Italics ours.]'

"From the foregoing it is clear that, if legislative history may be resorted to as an aid in the construction of section 905, Congress intended to deprive the Customs Court of jurisdiction of suits to recover amounts paid as compensating taxes, and to vest jurisdiction over such suits in the United States district courts and the Court of Claims."

It will be noted that in said Senate Committee report it is expressly stated that the Court of Claims and the district courts will have jurisdiction of suits for the recovery of amounts paid as compensating taxes. Therefore it is clear that Congress, in depriving the Customs Court of jurisdiction over claims for the recovery of amounts paid as compensating taxes, did

not intend to withdraw its consent to be sued in courts of the United States for recovery of such taxes, but did intend that jurisdiction over cases involving the recovery of such taxes should be vested in the Court of Claims and in the district courts.

Whether, in view of the express language of section 905 with respect to jurisdiction of district courts, it may be held that the district courts have jurisdiction over cases involving compensating taxes, we need not here inquire, for it may be properly held that the Court of Claims, at least, was vested with such jurisdiction.

In the case of Barrett v. Van Pelt, 268 U.S. 85, 45 S.Ct. 437, 439, 69 L.Ed. 857, it was stated: " * * * Being satisfied of the legislative intention, the court will not be prevented from giving that intention effect by a too rigid adherence to the very word and letter of the statute. * * "

In the case of Ozawa v. United States, 260 U.S. 178, 43 S.Ct. 65, 67, 67 L.Ed. 199, the court said: "It is the duty of this Court to give effect to the intent of Congress. Primarily this intent is ascertained by giving the words their natural significance, but if this leads to an unreasonable result plainly at variance with the policy of the legislation as a whole, we must examine the matter further. We may then look to the reason of the enactment and inquire into its antecedent history and give it effect in accordance with its design and purpose, sacrificing, if necessary, the literal meaning in order that the purpose may not fail. * * *"

We therefore hold that title VII does provide a judicial remedy for the recovery of amounts paid as compensating taxes under the Agricultural Adjustment Act, and that section 905 of the Revenue Act of 1936, divesting the Customs Court of jurisdiction over cases for the recovery of such taxes, violates no provision of the Constitution.

For the reasons hereinbefore stated, the Customs Court properly dismissed the involved protests for lack of jurisdiction over the same, and the judgment appealed from is affirmed..

Affirmed.