## ANNISTON MANUFACTURING CO. *v.* DAVIS, COLLECTOR OF INTERNAL REVENUE.

No. 667. Argued April 2, 1937.—Decided May 17, 1937.

338

*Messrs. Joseph B. Brennan* and *William A. Suther-land* for petitioner.

*Solicitor General Reed* and *Assistant Attorney General Morris,* with whom *Messrs. Sewall Key* and *J. Louis Monarch,* and *Miss Helen R. Carloss* were on the brief, for respondent.

By leave of Court, briefs of *amici curiae* were filed by: *Messrs. William B. McIlvaine* and *William B. Hale; Messrs. Toy D. Savage* and *William R. Perkins,* on behalf of Charles W. Priddy & Co.; *Messrs. Edward R. Hale* and *Bennett Sanderson,* on behalf of the Receivers of Hoosac Mills Corp.; *Mr. Bennett E. Siegelstein; Mr. Richard B. Barker; Mr. George T. Buckingham;* and *Messrs. Malcolm Donald* and *Edward E. Elder,* on behalf of Pacific Mills, Inc.,—all challenging the Act.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Petitioner brought this suit on November 22, 1935, against the Collector of Internal Revenue to recover the amounts paid as cotton "processing" taxes (first cause of action) and as cotton "floor stock" taxes (second cause of action) under the Agricultural Adjustment Act of 1933. 48 Stat. 31, 35, 40. Petitioner alleged the unconstitutionality of the statute imposing the tax (*United States* v. *Butler,* 297 U. S. 1) and that claim for refund had been rejected by the Commissioner of Internal Revenue on August 16, 1935. After the enactment of Title VII of the Revenue Act of 1936, §§ 901–917 (49 Stat. 1747), petitioner amended its complaint, asserting the

unconstitutionality of these provisions. Demurrer was sustained by the District Court (15 F. Supp. 257) and its judgment of dismissal was affirmed by the Circuit Court of Appeals upon the ground that the court below was without jurisdiction to entertain the action. 87 F. (2d) 773. In view of the importance of the questions raised, we granted certiorari.

Title VII, §§ 901–917, of the Revenue Act of 1936, provided a new administrative procedure for the recovery of amounts collected under the Agricultural Adjustment Act. Section 901 repealed §§ 21 (d), 21 (e), and 21 (g), of the amendments of 1935 (49 Stat. 771–773). Section 902 prescribed the conditions on which refunds should be made. Section 903 related to the filing of claims. Sections 904 and 905 prescribed periods of limitation and provided for the jurisdiction of the District Courts, concurrent with the Court of Claims, for the recovery of amounts collected as floor stock and compensating taxes. Section 906 prescribed the procedure on claims for refunds of processing taxes. Section 907 established certain rules of evidence or presumptions to be observed in the administrative proceeding. Section 908 related to allowance of interest. Section 909 denied review of the administrative ruling by any other administrative or accounting officer. Section 910 undertook to free the collector from liability for moneys collected by him and paid into the Treasury in performance of his official duties. Section 913 defined various terms employed. Other sections laid down administrative rules not requiring attention in the present discussion.

*First.* Petitioner contends that at the time it brought this suit it had a vested right of action against the Collector to recover the amounts exacted under statutory provisions held to be invalid; that this right of action could not be destroyed without violating the Fifth Amendment; that the Collector was personally liable for

the amounts collected and that § 910 which attempted to destroy that liability is unconstitutional.

The Government answers that the instant case "does not require a decision as to the power of Congress to withdraw suit entirely, both against the Collector and against the Government"; that Congress "has left a remedy against the Government which is fair and adequate in every respect." We agree with the Government's contention that if the administrative remedy is fair and adequate, other questions with respect to the liability of the Collector and the validity of § 910 need not now be considered. We had occasion to deal with a cognate question in *Burrill* v. *Locomobile Co.*, 258 U. S. 34. That decision was rendered in suits brought by foreign corporations in the federal court to recover taxes alleged to have been paid to the defendant, the Treasurer of Massachusetts, under duress and in obedience to statutes held by this Court to be unconstitutional in *International Paper Co.* v. *Massachusetts*, 246 U. S. 135, and *Locomobile Co.* v. *Massachusetts*, 246 U. S. 146. A statute of Massachusetts provided that any corporation aggrieved by the exaction of the tax could apply by petition to the Supreme Judicial Court and that the remedy so provided should be exclusive. As the statute contained a provision for repayment of any sum adjudged to have been illegally exacted, it was contended that it constituted a bar to a personal suit against the Treasurer who had collected the tax. This Court agreed with the defendant upon that point. The State had substituted an exclusive remedy against itself for the remedy against the Treasurer and had guaranteed payment of the amount found to be due. The validity of the statute was sustained. We said that we did "not perceive why the State may not provide that only the author of the wrong shall be liable for it, at least when, as here, the

remedy offered is adequate and backed by the responsibility of the State."

The same reasoning is applicable here. The Government has not denied its obligation to refund the amounts found in the authorized proceeding to be recoverable, but has recognized that obligation. In such a case, the substitution of an exclusive remedy directly against the Government is not an invasion of constitutional right. Nor does the requirement of recourse to administrative procedure establish invalidity if legal rights are still suitably protected. The immediate question is whether the authorized proceeding affords a fair and adequate remedy. We accordingly inquire whether the prescribed procedure gives an opportunity for a full and fair hearing and determination of all questions of fact and adequately provides for the protection of the legal rights of the claimant, embracing whatever right of refund the claimant is entitled to assert under the Federal Constitution.

*Second.* With respect to floor stock taxes, no serious question is presented as to the adequacy of the remedy. The remedy by suit is expressly preserved. If the Commissioner refuses refund, suit may be brought against the United States in the Court of Claims or in the District Court for the recovery of the amount claimed to have been illegally exacted. § 905.

*Third.* With respect to the refunding of processing taxes, a special and exclusive administrative procedure is provided. § 906. Disallowance by the Commissioner of a claim of refund, in whole or part, is made final unless within three months the claimant files a petition for hearing upon the merits by a Board of Review which the Act establishes in the Treasury Department. The Board is composed of nine members who are officers or employees of the Department and are designated by the Secretary of the Treasury. The Board is "to determine the

amount of refund due any claimant with respect to such claim." The Commissioner is required to "make refund of any such amount determined by a decision of the Board which has become final." § 906 (b). The hearing, upon notice, before the Board is to be open to the public and is to be conducted by a presiding officer who is either a member of the Board or an officer or employee of the Treasury Department designated by the Secretary of the Treasury. The proceedings are to be in accordance with the rules of practice and procedure prescribed by the Board with the approval of the Secretary of the Treasury save with respect to rules of evidence, which are to be in accordance with those applicable in courts of equity of the District of Columbia. The claimant and the 'Commissioner are entitled "to be represented by counsel, to have witnesses subpoenaed, and to examine and cross examine witnesses." Provision is made to compel the attendance and testimony of witnesses and the production of books and papers from any place in the United States and to require the taking of depositions. § 906 (c) (d). The presiding officers are to recommend findings of fact and a decision to the Board or the proper division thereof within six months after the conclusion of the hearing. Briefs with respect to such recommendations may be submitted within a specified time. The Board or a division is to make its findings of fact and decision in writing as quickly as practicable. The findings and decision of a division are to become those of the Board within thirty days unless the Chairman has directed that they be reviewed by the Board. Copies of the findings and decision are to be mailed to the claimant and the Commissioner. § 906 (e). There is a further provision as to costs and fees. § 906 (f). The decision of the Board is to become final in the same manner as decisions of the Board of Tax Appeals under § 1005 of the Revenue Act of 1926 as amended. § 906 (g); 26 U. S. C. 640.

Judicial review of the decision of the Board is provided. That review may be had by a Circuit Court of Appeals or by the United States Court of Appeals for the District of Columbia, according to the residence or place of business of the claimant, or by any such court as may be designated by the Commissioner and the claimant by stipulation. Upon petition for review the Board is to certify and file in the appropriate court a transcript of the record upon which the findings and decision were based. Thereupon, the Court of Appeals is to have "exclusive jurisdiction to affirm the decision of the Board, or to modify or reverse such decision, if it is not in accordance with law, with or without remanding the cause for a rehearing, as justice may require." § 906 (g). If the claimant or the Commissioner applies to the Court of Appeals for leave to adduce additional evidence the court may order it to be taken before the presiding officer if the court is satisfied that the additional evidence is material and that there were reasonable grounds for failure to adduce it at the hearing. The Board may modify its findings and decision by reason of such additional evidence, filing its modified or new determination with the court. The judgment of the Court of Appeals is to be final, subject to review by this Court upon certification or certiorari as provided in §§ 239 and 240 of the Judicial Code.

We think that this plan of procedure provides for the judicial determination of every question of law which the claimant is entitled to raise. We find nothing in the statute which limits the judicial review to questions of statutory construction or of mere regularity of procedure. The "law," with which the decision of the Board may be in conflict, may be the fundamental law. Questions of validity as well as of statutory authority or regularity may be determined. These may relate to due process in the hearing or in the refusal of a refund. The Government does not contest this construction but on the con-

trary affirms it. The Government recognizes and urges that the jurisdiction given to the Court of Appeals "to modify or reverse" the decision of the Board "if it is not in accordance with law" includes the power to review all questions of general and statutory law and all constitutional questions. Thus every constitutional right which the petitioner here is entitled to invoke with respect to the refund of the taxes which it has paid may be heard and determined by the Court of Appeals and ultimately by this Court upon a review of a decision reached in the course of the prescribed administrative procedure. The Government urges, and we think correctly, that if on such a review any part of Title VII were held to be invalid, "the taxpayer may recover all of the taxes to which he is entitled under such a decision." Upon the judicial review of the action of the Board, the Court of Appeals and this Court would have power "to direct the Board to enter any designated judgment" and the Commissioner is required to make refund of any amount which may thus be determined to be due the claimant. [1]

---

[1] Upon this point the Government states in its brief (pp. 104, 105):

"The established rule as to the proper scope of constitutional litigation can be applied in this case with no danger of injury to petitioner. If, upon an appropriate record and in the light of an actual attempt by the taxpayer to show the incidence of the processing tax, this Court should hold any part of Title VII invalid, the taxpayer may recover all of the taxes to which he is entitled under such a decision, with interest at 6 per cent per annum (Sec. 908 (a); Sec. 614 (a) of the Revenue Act of 1928, c. 852, 45 Stat. 791). For, whether or not Section 902 and Section 907 be held invalid, the Board of Review would still remain as a mechanical means by which to enforce the decision of a circuit court of appeals or of this Court. Even if Section 902 were held invalid, and recovery allowed on mere proof of payment of Agricultural Adjustment Act taxes, the Board of Review would still have jurisdiction to review the allowance or disallowance of any claim, and the circuit courts of appeals and this Court would still have power to direct the Board to enter any desig-

*Fourth.* The question then is whether, despite this broad right of judicial review of the action of the Board, the administrative scheme has such inherent constitutional defects that the petitioner should not be remitted to that procedure. The inquiry has particular relation to the provisions (1) as to burden of proof, § 902, (2) as to presumptions, § 907, and (3) as to certain matters of administrative detail.

*The burden of proof.*—Section 902, the full text of which is set out in the margin,[2] provides that no refund

nated judgment. And Section 906 (b) provides that 'the Commissioner shall make refund of any such amount determined by a decision of the Board which has become final.'"

[2] SEC. 902. *Conditions on Allowance of Refunds.*

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under the Agricultural Adjustment Act, unless the claimant establishes to the satisfaction of the Commissioner in accordance with regulations prescribed by him, with the approval of the Secretary, or to the satisfaction of the trial court, or the Board of Review in cases provided for under Section 906, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof, or

"(b) That he has repaid unconditionally such amount to his vendee (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or

shall be allowed unless the claimant establishes to the satisfaction of the Commissioner, or of the trial court, or of the Board of Review in cases under § 906, that the claimant bore the burden of the amount paid as tax and "has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly" (1) through the inclusion of the amount paid in the price of the product, (2) through reduction of the price paid for the raw material, or (3) "in any manner whatsoever."

According to the allegations of the complaint, the petitioner initially did bear the burden of the unconstitutional tax, as petitioner paid it. The question for administrative determination is whether the burden of that payment has been shifted. So far as petitioner's contention may be taken to be that it is entitled to recover by reason of the invalidity of the tax, although in fact its burden has been "passed on" to another, the contention cannot be sustained. While the taxpayer was undoubtedly hurt when he paid the tax, if he has obtained relief through the shifting of its burden, he is no longer in a position to claim an actual injury and the refusal of a refund in such a case cannot be regarded as a denial of constitutional right.

That question was decided in *United States* v. *Jefferson Electric Co.,* 291 U. S. 386, and the controlling principle as to burden of proof was declared. There, actions at law had been brought, one against the United States and others against a revenue collector, to recover money alleged to have been illegally exacted as an excise tax. The ground of illegality was that the sales, with respect to which the taxes were laid, were not within the purview of the tax statute. The question concerned the

---

indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever."

authority of the court to entertain the actions in view of the provision of § 424 of the Revenue Act of 1928 relating to refunds. Properly construed, that provision was taken "as substantively limiting the right to a refund of taxes of the designated class to instances where the taxpayer either has not directly or indirectly collected the tax from the purchaser or having so collected it has returned it to him." This "substantive limitation" was deemed to be "an element of the right to a refund of such taxes," although they were wholly invalid and not merely laid in excess of what was lawful, and hence the statute required that this element, like others, "be satisfactorily established in any proceedings where an asserted right to a refund is presented for examination and determination." We held that the provision was applicable to judicial as well as to administrative proceedings for refunds under the Act. *Id.*, p. 395. We recognized that, under the system then in force, in view of the illegality of the tax, "there accrued to the taxpayer when he paid the tax a right to have it refunded without any showing as to whether he bore the burden of the tax or shifted it to the purchasers." And it was further conceded that the provision of § 424 of the Revenue Act of 1928 applied "to rights accrued theretofore and still subsisting," and subjected them to the restriction "that the taxpayer (a) must show that he alone has borne the burden of the tax, or (b) if he has shifted the burden to the purchasers, must give a bond promptly to use the refunded sum in reimbursing them." *Id.*, p. 401. But we were unable to conclude that in imposing this restriction the section struck down prior rights or did more "than to require that it be shown or made certain that the money when refunded will go to the one who has borne the burden of the illegal tax, and therefore is entitled in justice and good conscience to such relief." We held that there was no infringement of due process of law in that restriction or

in placing upon the claimant the burden of proof. We said (*id.*, p. 402):

"If the taxpayer has borne the burden of the tax, he readily can show it; and certainly there is nothing arbitrary in requiring that he make such a showing. If he has shifted the burden to the purchasers, they and not he have been the actual sufferers and are the real parties in interest; and in such a situation there is nothing arbitrary in requiring, as a condition to refunding the tax to him, that he give a bond to use the refunded money in reimbursing them."

The opposing contention was found to be particularly faulty in that it overlooked the fact that the statutes providing for refunds proceed on the same equitable principles that underlie an action in assumpsit for money had and received. That action "aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which *ex aequo et bono* belongs to the plaintiff." *Id.*, p. 403.

The circumstance that under Title VII, here involved, there is no provision for making a refund to particular persons, to whom the burden of the invalid exaction may be found to have been shifted, presents no sound distinction so far as the claimant is concerned. The controlling principle is that there is no denial of constitutional right in requiring the claimant to show, where it can be shown, that he alone has borne the burden of the invalid tax and has not shifted it to others.

Apart from this question, the gravamen of petitioner's complaint is that § 902 demands the impossible; that it sets up a condition of recovery which in petitioner's case cannot possibly be met. That is, that the statute not only requires the claimant to show that the burden of the tax has not been shifted, where that can be shown, but bars recovery where in the nature of the case that cannot be shown. Petitioner contends that it is within the

latter class. In its amended complaint, petitioner sets forth at length the features of the operation of a cotton mill such as its own. By reason of the nature of these operations petitioner asserts that there is "an inherent impossibility" of proving whether or to what extent the burden of the taxes paid has been shifted to others.

This allegation is at best but a statement of a legal conclusion which must depend upon the facts as they appear when proof is taken. The question is whether the petitioner is entitled to insist as a matter of constitutional right upon trying out the question of impossibility in this suit rather than in an administrative proceeding where all the pertinent facts as to the course of business may be presented and the conclusions they require both of fact and law may be reached. This assertion of such a constitutional right rests upon a construction of § 902 to the effect that if the facts, fully disclosed, afforded no basis for *any* determination as to the shifting of the burden of the tax, and hence gave no warrant for a finding that the burden had been shifted from the claimant to others, still the statute would require a denial of the right to a refund. The claimant would then stand, by virtue of the injury caused by the payment of the tax, not as one seeking relief when he had not been hurt, but as one who had been hurt by a payment unconstitutionally required and whose proved injury could not be said to have been redressed. It is in that aspect that the statute is assailed as leaving the claimant without remedy for a deprivation of his property without due process of law.

Despite the broad language of § 902, we do not think that it should be construed as intended to deny a refund in any case where a claimant is constitutionally entitled to it. We apply the familiar canon which makes it our duty, of two possible constructions, to adopt the one which will save and not destroy. We cannot attribute to Congress an intent to defy the Fifth Amendment or

"even to come so near to doing so as to raise a serious question of constitutional law." *Federal Trade Comm'n v. American Tobacco Co.*, 264 U. S. 298, 307; *Panama R. Co.* v. *Johnson*, 264 U. S. 375, 390; *Blodgett* v. *Holden*, 275 U. S. 142, 148. When the Congress requires the claimant, who has paid the invalid tax, to show that he has not been reimbursed or has not shifted its burden, the provision should not be construed as demanding the performance of a task, if ultimately found to be inherently impossible, as a condition of relief to which the claimant would otherwise be entitled. There is ample room for the play of the statute within the range of possible determinations. Impossibility of proof may not be assumed. It cannot be doubted that the requirement has appropriate and valid effect in placing upon the claimant the duty to present fully all the facts pertaining to the question of the shifting of the burden of the tax and in denying relief where the facts justify a conclusion that the burden has been shifted from the claimant to others. When the facts have been shown it becomes the duty of the Board of Review to make its determination according to the legal rights of the claimant. That is the necessary import of the provision for judicial review, giving authority to the reviewing court to modify or reverse the decision of the Board "if it is not in accordance with law." Findings that can properly be made upon the evidence must thus support a decision according to legal right. And, as we have seen, the reviewing court, and finally this Court, may direct the Board "to enter any designated judgment"[3] to which the claimant is constitutionally entitled and the Commissioner must refund the amount thus determined to be due.

In saying this, we are not passing upon the constitutional right of petitioner to a refund or upon the question

---

[3] See Note 1.

whether in its case the shifting of the burden of the tax is or is not "susceptible of proof." Constitutional questions are not to be decided hypothetically. When particular facts control the decision they must be shown. *Borden's Farm Products Co.* v. *Baldwin,* 293 U. S. 194, 208–210. Petitioner's contention as to impossibility of proof is premature. Manifestly there is no impossibility so far as the production of proof of petitioner's operations or course of business is concerned. What is meant by impossibility of proof is impossibility of determination after these facts are in. Whether or not any such impossibility of determination will exist is a question which properly should await the ascertainment of the facts. For the present purpose it is sufficient to hold, and we do hold, that the petitioner may constitutionally be required to present all the pertinent facts in the prescribed administrative proceeding and may there raise, and ultimately may present for judicial review, any legal question which may arise as the facts are developed.

These considerations also dispose of the contention that § 902 "is so vague and uncertain that it is meaningless, and therefore affords no remedy." It is not necessary for the Congress, in insisting that a claimant should not recover where it appeared that he had not borne the burden of the tax, to attempt to formulate the conclusions which would be appropriate upon varying states of fact. Petitioner's argument, drawn from the writings of economists, is itself sufficient to show the futility of such an effort. The Congress could, and did, lay down a general principle and leave its application to the facts as they would appear in particular instances in a proceeding adapted to their full disclosure. The general principle thus laid down is no more vague and indefinite than the equitable doctrine which governs the right of recovery in actions for money had and received.

*The presumptions under § 907.*—Petitioner also contests the validity of the administrative proceeding because of the rules of evidence and presumptions which the statute establishes. Section 907 provides, with respect to processing taxes, that it "shall be *prima facie* evidence that the burden of such amount was borne by the claimant to the extent (not to exceed the amount of the tax) that the average margin per unit of the commodity processed was lower during the tax period than the average margin was during the period before and after the tax"; and that "If the average margin during the tax period was not lower, it shall be *prima facie* evidence that none of the burden of such amount was borne by the claimant but that it was shifted to others."

The "tax period" is defined as the period in which the claimant actually paid the tax to a collector and ends with the last payment. The "period before and after the tax" is defined as "the twenty-four months (except that in the case of tobacco it shall be the twelve months) immediately preceding the effective date of the processing tax, and the six months, February to July, 1936, inclusive." Provision is made for the computation of what is called the "average margin" for the respective periods, the "margin" being determined by deducting from the gross sales value of articles processed the cost of the commodity processed and the processing tax.

Petitioner contends that the presumptions are entirely arbitrary and therefore unconstitutional. There is a general allegation to that effect in petitioner's amended complaint. But it cannot be said that the comparisons set up between the results of operations during the "tax period" and the "period before and after the tax" are wholly irrelevant. Nor can it now be determined what will be the effect of the presumptions. While petitioner assails them, its complaint contains no allegation as to their actual effect in relation to petitioner's operations.

*Non constat* but that they may work to petitioner's advantage. For all that we know the presumption may establish *prima facie* that petitioner has borne the burden of the tax. Petitioner invites us to enter into a purely speculative inquiry for the purpose of condemning statutory provisions which have not been tried out and the effect of which cannot now be definitely perceived. We must decline that invitation and adhere to the fundamental principle which governs our determination of constitutional questions. *Liverpool, New York & Philadelphia Steamship Co.* v. *Commissioners,* 113 U. S. 33, 39; *Cincinnati* v. *Vester,* 281 U. S. 439, 448, 449; *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 324.

The stated presumptions are rebuttable. If they work adversely to its interests, petitioner will have ample opportunity to prove all the rebutting facts. Section 907 (e) provides that either the claimant or the commissioner may rebut the presumptions "by proof of the actual extent to which the claimant shifted to others the burdens of the processing tax." There follows a detailed provision as to what such proof may include. But that provision is not exclusive. It is expressly stated that the proof in rebuttal shall not be limited to what is thus described. Petitioner urges that the statute requires that this proof shall be of the "actual extent" to which the burden of the tax has been shifted, and recurs to the argument as to the inherent impossibility of producing such proof. What we have already said with respect to that argument is applicable in this connection. We do not think that Congress was attempting to require the impossible. The permissible, and we think the true, construction of § 907 (e) is that the words *"actual* extent" are used in contradistinction to the *presumed* extent, according to the *prima facie* presumption to which the proof in rebuttal is addressed. In the light of the context, and of the entire scheme of the administrative pro-

ceeding, we are of the opinion that the provision was intended to afford, and does afford, full opportunity to the claimant to present any evidence which may be pertinent to the questions to be determined by the Board of Review and which may be appropriate to overcome any presumption which might be indulged either under § 907 (a) or otherwise.

*Procedural due process in the conduct of the administrative hearing.*—Petitioner also complains that under § 906 (d) the hearing is to be conducted, not by the Board of Review, or a division thereof, but by a "presiding officer" designated by the Secretary of the Treasury; and that under § 906 (e) the presiding officer is to recommend to the Board, or a division, findings of fact and a decision. Petitioner urges that the Board, or its division, is not required by the statute to consider the evidence and hence that the procedure contemplated by § 906 does not meet the requirements of due process. We find no merit in these contentions. There is no provision of the statute which is necessarily inconsistent with the observance of the due process required in hearings by administrative bodies. *Interstate Commerce Comm'n* v. *Louisville & N. R. Co.,* 227 U. S. 88, 91; *United States* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274, 288; *Morgan* v. *United States,* 298 U. S. 468, 480, 481; *Ohio Bell Telephone Co.* v. *Public Utilities Comm'n, ante,* p. 292. "The provision for a hearing implies both the privilege of introducing evidence and the duty of deciding in accordance with it." *Chicago Junction Case,* 264 U. S. 258, 265. Whatever the privilege or duty of the presiding officer, and whatever may be his recommendation, the statute requires that "the Board or a division shall make its findings of fact and decision in writing" and shall certify and file with the court on judicial review a transcript of the record upon which its findings and decision are based.

The court has jurisdiction "to affirm the decision of the Board or to modify or reverse such decision." If additional evidence is taken "the Board may modify its findings of fact and decision" by reason of such evidence. The whole scheme of the administrative proceeding presupposes hearing and determination in accordance with the demands of due process. The Board which makes its findings and renders its decision must consider the evidence and base its findings and decision upon it, and until the contrary appears we must assume that the Board will do so. *Morgan* v. *United States, supra.*

We conclude that the authorized procedure provides for a full and fair hearing and determination of all matters of fact and that, through judicial review, it provides for the protection of all the legal rights of the petitioner including any constitutional right which it may be entitled to invoke with respect to the refund which it seeks. The petitioner may thus obtain through this proceeding whatever judgment its case warrants, a judgment which the Government, by virtue of the requirement that the Commissioner shall make refund accordingly, binds itself to pay.

The judgment of dismissal is affirmed, but upon the grounds stated in this opinion.

*Affirmed.*

Mr. Justice Stone and Mr. Justice Cardozo concur in the opinion save that they reserve their vote as to the constitutional or statutory rights of the taxpayer in the event that it shall be impossible to ascertain whether there has been a shifting of the tax, an examination of those rights, in their judgment, being unnecessary now, since "impossibility of proof," in the language of the opinion, "may not be assumed."

Mr. Justice McReynolds dissents.