PH. ORTH COMPANY, Appellant, vs. NEW RICHMOND ROLLER MILLS COMPANY, Respondent.

*September 14—October 10, 1939.*

494

For the appellant there was a brief by *Orth & Orth,* and oral argument by *Charles A. Riedl,* all of Milwaukee.

For the respondent there was a brief by *Doherty, Rumble, Butler, Sullivan & Mitchell* of St. Paul, Minnesota, attorneys, and *Hill, Beckwith & Harrington* of Madison and *Pierce Butler, Jr.,* of St. Paul of counsel, and oral argument by *W. T. Doar* of New Richmond.

MARTIN, J.   Since the appeal is from an order sustaining demurrers to the several alleged causes of action, each will be separately considered in the order alleged.

In its first cause of action plaintiff alleges "that the plaintiff from on or about July 22, 1933, to on or about March 31, 1934, had eight thousand one hundred forty-five barrels of wheat flour and four hundred twenty barrels of vitamine or whole-wheat flour shipped to it on its undelivered bookings made prior to July 9, 1933, with defendant, and that the plaintiff paid to the defendant the processing tax on all of the shipments made during that period, for which it has not been reimbursed." It is alleged that the total processing tax on said quantity of flour amounted to $11,651.70. It is further alleged that plaintiff paid this amount of tax to the defendant. It is also alleged that the defendant has paid said amount of tax to the United States government, and that defendant has filed with the government a claim for a refund of said tax. It is further alleged that "defendant will not be able to realize [its claim for refund] until after it has reimbursed the plaintiff." There is no allegation of any express agreement by the defendant to repay those taxes to the plain-

tiff upon the A. A. A. being held unconstitutional. The plaintiff seeks recovery under its first cause of action on the theory of "unjust enrichment." It appears that the taxes here in question were upon shipments made by defendant to the plaintiff after July 9, 1933,—the effective date of the A. A. A. processing tax; that such shipments were pursuant to bookings made prior to July 9, 1933.

The A. A. A. processing tax (Act of May 12, 1933, ch. 25, title 1, sec. 18, 48 U. S. Stat. at L. 41, 7 USCA, p. 339, § 618), provides:

*"Existing contracts; imposition of tax on vendee; collection.* (a) If (1) any *processor*, jobber, or wholesaler has, prior to the date a tax with respect to any commodity is first imposed under this chapter, made a *bona fide* contract of sale for delivery on or after such date, of any article processed wholly or in chief value from such commodity, and if (2) such contract does not permit the addition to the amount to be paid thereunder of the whole of such tax, then (unless the contract prohibits such addition) the *vendee* shall pay so much of the tax as is not permitted to be added to the contract price.

"(b) Taxes payable by the *vendee* shall be paid to the vendor at the time the sale is consummated and shall be collected and paid to the United States by the vendor in the same manner as other taxes under this chapter. In case of failure or refusal by the *vendee* to pay such taxes to the vendor, the vendor shall report the facts to the commissioner of internal revenue who shall cause collections of such taxes to be made from the *vendee*."

From the allegations of the complaint, under subdivision (a) of the act above quoted, the primary liability for the tax was on the plaintiff. Defendant simply received the tax and passed it on to the United States government. It is clear that the contracts came under the provisions of subdivision (a) of the statute above quoted, and did not permit the addition of the tax to the contract price, or else if the increase in price to cover the tax was permitted, plaintiff would

have no cause for complaint. In this connection it is alleged in the complaint "that by reason of the afore-mentioned section of the Agricultural Adjustment Act, and in attempted compliance therewith, the defendant on each shipment of flour made after July 9, 1933, against those bookings, added the amount of the tax as an additional item on the invoice," and it is further alleged "that to prevent a cancellation of the undelivered bookings, and being of the opinion that the afore-mentioned subdivision (a), along with the entire act was constitutional, the plaintiff had no other alternative but to pay the tax item." In view of these allegations the inference is that such contracts were within subdivision (a) of section 618, above quoted. Otherwise why allege that the tax was added in attempted compliance with the act, and the further allegation that plaintiff "had no other alternative but to pay the tax item."

We fail to find any appropriate allegations in this cause of action to support a recovery on the theory of an unjust enrichment. The complaint shows that the plaintiff paid the tax to the defendant; the defendant paid the same amount to the United States government, and all we have is an allegation that a claim for a refund for the amount of the tax has been made by the defendant. There is no allegation that defendant has received any part of its claim for a refund. It is self-evident that the allegations on the theory of an unjust enrichment fail to state any cause of action. In *Hodgman Rubber Co. v. Dumaine* (1st Cir. 1937), 93 Fed. (2d) 165, the court said:

"Furthermore, inasmuch as the Amoskeag Company, the seller, has paid the tax to the United States and received nothing back, . . . the appellant could not . . . maintain its claim for the amount of the tax, . . . . for the reason that the Amoskeag Company . . . could not be said to have unjustly enriched itself at the appellant's expense, for it paid the tax and has not been reimbursed through a refund of it."

The conditions on allowance of refunds are stated in 7 USCA, p. 354, § 644, as follows:

"No refund shall be made or allowed, in pursuance of court decisions or otherwise, of any amount paid by or collected from any claimant as tax under this chapter, unless the claimant establishes to the satisfaction of the commissioner in accordance with regulations prescribed by him, with the approval of the secretary, or to the satisfaction of the trial court, or the board of review in cases provided for under section 648 of this title, as the case may be—

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of this chapter, or in the price of any article processed from any commodity with respect to which a tax was imposed under this chapter, or in any charge or fee for services or processing; (2) through reduction of the price paid for any such commodity; or (3) in any manner whatsoever; and that no understanding or agreement, written or oral, exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or may shift the burden thereof; or

"(b) That he has repaid unconditionally such amount to his vendee, (1) who bore the burden thereof, (2) who has not been relieved thereof nor reimbursed therefor, nor shifted such burden, directly or indirectly, and (3) who is not entitled to receive any reimbursement therefor from any other source, or to be relieved of such burden in any manner whatsoever."

There is no allegation that plaintiff has borne the burden of the tax in question. If plaintiff has shifted the tax to its customers, defendant would not be entitled to any refund under the statutory provisions above quoted. In order to recover on its claim for a refund of the tax, it appears that

defendant would have to establish that it had paid the tax to its vendee, and that its vendee has not shifted the tax to its customers. It follows that in the absence of a direct allegation by the plaintiff that it has not shifted the tax to its customers, which is necessary under the provisions of the statute, its complaint does not show that the defendant can secure a refund of the tax paid. Appellant contends such allegation is not necessary, and in support of its contention cites *United States v. Jefferson Electric Mfg. Co.* 291 U. S. 386, 401, 54 Sup. Ct. 443, 448, 78 L. Ed. 859; *Anniston Mfg. Co. v. Davis,* 301 U. S. 337, 57 Sup. Ct. 816, 822, 81 L. Ed. 1143. These cases do not sustain appellant's contention. True, in the *Jefferson Case* the court said:

"If the tax was erroneous and illegal, as is alleged, it must be conceded that, under the system then in force, there accrued to the taxpayer when he paid the tax a right to have it refunded without any showing as to whether he bore the burden of the tax or shifted it to the purchasers."

However, the court was there referring to statutory proceedings for the recovery of a refund by a taxpayer from the government. Reference is specifically made to the procedure under the system then in force. The statute there under consideration did not require the taxpayer to show that he had borne the burden of the tax. In the *Anniston Case, supra,* which involved the refunding of taxes under the Federal Agricultural Adjustment Act, at page 348, the court said:

"So far as petitioner's contention may be taken to be that he is entitled to recover by reason of the invalidity of the tax, although in fact its burden has been 'passed on' to another, the contention cannot be sustained. While the taxpayer was undoubtedly hurt when he paid the tax, if he has obtained relief through the shifting of its burden, he is no longer in a position to claim an actual injury and the refusal of a refund in such a case cannot be regarded as a denial of constitutional rights."

And in discussing the *Jefferson Case, supra,* the court said at page 350:

"The opposing contention was found to be particularly faulty in that it overlooked the fact that the statutes provid-ing for refunds proceed on the same equitable principles that underly an action in *assumpsit* for money had and received."

In *Johnson v. Igleheart Bros.* (7th Cir. 1938) 95 Fed. (2d) 4, an action by a taxpayer's vendee for the recovery from the taxpayer of A. A. A. processing taxes, plaintiff was held to the equitable requirement that he allege and prove that he has not shifted the burden of such taxes to his own customers. At page 9 the court said:

"Plaintiff also seeks to sustain his position from the stand-point of equity, and urges that a denial of his claim will re-sult, at his expense, in an unjust enrichment of the defendant. We do not think we are called upon to deal with such a theory. The contracts called for the delivery of the flour at various times over an extended period and considering the nature of plaintiff's business, it is not an unreasonable as-sumption that whatever amount was included in the contract price as processing tax, was passed on to those with whom it dealt. There is, of course, no allegation in the pleadings to this effect, but in the absence of an allegation to the contrary, how can this court say, as between the parties hereto, that the defendant has money, even if it be conceded that the same was collected as a processing tax, which belongs to the plaintiff?"

In its second cause of action plaintiff alleges that "from on or about January 30, 1934, to on or about May 23, 1935, it purchased twelve thousand three hundred twenty barrels of wheat flour and eight hundred thirty barrels of vitamine or whole-wheat flour from the defendant; that the plaintiff paid the processing tax on all of said purchases, for which it has only been reimbursed for two hundred twenty-five barrels of wheat flour and three hundred eighty-five barrels of vitamine or whole-wheat flour." It is further alleged that the total tax amounted to $17,127.20 "which amount was charged by

the defendant additional to the regular price of flour, and which amount was paid by the plaintiff to the defendant." In this cause of action it appears that plaintiff received a refund from the secretary of the treasury for the processing taxes paid on two hundred twenty-five barrels of wheat flour and three hundred eighty-five barrels of vitamine or whole-wheat flour which flour was sold to either state or federal organizations for charitable distribution or use under the provisions of section 615 (c) of the A. A. A., 7 USCA, pp. 331, 332, § 615, which provides:

"(c) Any person, including any state or federal organization or institution, delivering any product to any organization for charitable distribution, or use, including any state or federal welfare organization, for its own use, whether the product is delivered as merchandise, or as a container for merchandise, or otherwise, shall, if such product or the commodity from which processed is under this chapter subject to tax, be entitled to a refund of the amount of any tax due and paid under this chapter with respect to such product so delivered, or to a credit against any tax due and payable under this chapter of the amount of tax which would be refundable under this section with respect to such product so delivered: *Provided, however,* that no tax shall be refunded or credited under this section, unless the person claiming the refund or credit establishes, in accordance with regulations prescribed by the commissioner of internal revenue, with the approval of the secretary of the treasury, (1) that he has not included the tax in the price of the product so delivered or collected the amount of the tax from the said organization, or (2) that he has repaid, or has agreed in writing to repay, the amount of the tax to the said organization."

The processing taxes involved in the second cause of action were levied on the defendant. The taxes accrued subsequent to July 9, 1933, the effective date of the tax under the A. A. A. Plaintiff alleges that defendant collected the amount of such taxes from plaintiff, however, there is no allegation of an express agreement on the part of the defendant to repay to the plaintiff the amount of taxes here in-

volved. Plaintiff contends that it has alleged sufficient facts to constitute an express agreement, however, in this connection it relies upon the following allegation in its complaint:

"That for many years prior to the enactment of the Agricultural Adjustment Act, it had always been the practice of the plaintiff to phone or wire the defendant to book flour at a given price, some of such bookings being partially guaranteed against a decline of price, but all such bookings guaranteed as to a refund of the amount of the processing tax *which was included in the contract price,* in the event said tax was subsequently declared unconstitutional."

"That on and between October 10, 1934, and October 17, 1934, correspondence was had between the plaintiff and the defendant as to the course the defendant would pursue in the event the processing tax should be declared unconstitutional, the parties thereby placing an interpretation upon the flour bookings previously and to be subsequently entered into between them, and the plaintiff relying thereon to the extent that said bookings then remained unfilled."

No correspondence is set out in the complaint. There is no allegation that the correspondence resulted in any agreement. What interpretation the parties placed on the flour bookings or upon any other matter is not stated. It seems somewhat unusual that for many years prior to the enactment of the A. A. A. that the parties should be making guarantees concerning a tax not then in existence. The appellant cites no authority, and we find none, to sustain the contention that an express contract on any subject matter can be spelled out of the allegations above quoted. However, in passing, because of its bearing as to this and the other alleged causes of action, it should be noted that the processing tax was included in the contract price of the flour; it is so alleged in the first allegation quoted above. This fact is also alleged in connection with the affidavits made by defendant relative to the refund received by plaintiff on flour sold to state or federal organizations for charitable distribution or use to which reference has been made. In this connection it is alleged that.

"on or about the 11th day of October, 1934, the defendant set forth in an affidavit that it included in the agreed contract price the amount of the processing tax so paid by it into the treasury of the United States." Many cases have been adjudicated by federal and state courts concerning the rights of parties similarly situated to the parties in this case since the decision of the supreme court of the United States in *United States v. Butler* (1935), 297 U. S. 1, 56 Sup. Ct. 312, 80 L. Ed. 477, 102 A. L. R. 914, holding unconstitutional the Federal Agricultural Adjustment Act (7 USCA, § 601). The cases are collected and annotated in 115 A. L. R. 667.

The general rule is that the buyer must show either an express agreement by the seller to repay the amount of such taxes in the event that the law is declared unconstitutional, or else circumstances from which can be implied a promise to repay the amount of such taxes in the event of the invalidation of the tax law. However, where the contract price of the commodities purchased is a single composite price to be paid for the commodities at all events and includes the amount of the taxes (in question) along with all the other costs of manufacturing which entered into such price, then no promise to repay such tax in the event of the invalidity or repeal of the tax law can be implied. *Golding Bros. Co. v. Dumaine* (1st Cir. 1937), 93 Fed. (2d) 162; *Heckman & Co. v. I. S. Dawes & Son Co.* (1926) 56 App. D. C. 213, 12 Fed. (2d) 154. See 115 A. L. R. 667, note on cases cited. It appears from the allegations in this cause of action that plaintiff paid defendant for flour at a purchase price which included the amount of the processing taxes. We must assume that the defendant, in compliance with the federal statute, paid said amount to the government. It further appears that defendant has not received any refund from the government. Clearly, no facts are alleged showing any enrichment of the defendant because of the transaction. There is no allegation that plaintiff bore the burden of the tax it paid to

the defendant and did not pass it on to its customers. The demurrer to this cause of action was properly sustained.

The third cause of action is founded upon the same facts alleged in the second cause of action and they are pleaded in the alternative. It is alleged "that plaintiff paid said processing taxes to the defendant in trust, for the purpose of putting the defendant in funds with which to pay to the United States such processing taxes." It is further alleged that "in the event said processing taxes were later held to be unconstitutional . . . defendant was in duty bound to take appropriate steps to recover the same back from the United States [or from the courts which had impounded the money]; . . . that the plaintiff and defendant never intended that said tax fund, in the event the tax was declared invalid, should belong to the defendant but should be reimbursed to the plaintiff." A trust can arise only from an agreement, express or implied, or by operation of law. There is no appropriate allegation which would give rise to an express trust nor do the facts support a constructive trust. In *Cohen v. Swift & Co.* (7th Cir. 1938) 95 Fed. (2d) 131, 134, the court said:

"So we get back to the case of *Heckman & Co. v. Dawes & Son Co.* [12 Fed. (2d) 154], as announcing the law controlling in this case. . . . There, as here, it was contended that the money refunded to the defendant after the law by which it was collected was held to be illegal, constituted a trust fund for the benefit of the vendee. The court there held, as we must hold here, contrary to such contention. It is said here, the payments were not voluntarily paid by appellant, and in reply it can be just as accurately said that they were not voluntarily made in the *Heckman Case.*

"It is our conclusion that appellant has failed to state a cause of action which entitles it to recover either in whole or in part."

In the instant case there is no claim of duress, fraud, mistake, or overreaching by defendant. Plaintiff by reference has incorporated in its third cause of action the allegations of its alleged second cause of action. Hence, it should be

noted that plaintiff has alleged that it paid a purchase price which included the amount of the processing taxes. In any event sec. 644, 7 USCA, is applicable as to all alleged causes of action. There is no allegation that plaintiff has not passed on the taxes to its customers. We must hold that no cause of action is stated and the order sustaining the demurrer was properly entered.

The fourth cause of action is founded upon the same theory as the second. The difference in the facts being that this cause of action involves purchases made during a period subsequent to the period involved in the second, from June to December, 1935, during which time defendant refrained from paying over the amount of the taxes to the government. Also, this cause of action involves some rye as well as wheat flour upon which there was a processing tax included. This cause of action does not allege any express guarantee for the repayment of the processing taxes. There is no allegation that plaintiff bore the burden of the taxes which it seeks to recover. This cause of action contains the same allegations as set out in the second cause of action purporting to establish an express agreement for a refund of the processing tax. What has been said with reference to the two allegations referred to in that cause of action applies to the same two allegations in this cause of action. It follows that the allegations in this cause of action are insufficient in the same respects as the allegations of the second cause of action. The demurrer was properly sustained.

The fifth cause of action is the same as the fourth, so far as the facts are concerned, and is founded upon a trust theory as in the third cause of action. What has been said with reference to the third cause of action is applicable to the fifth cause of action and there is no occasion to repeat what has been said.

The sixth cause of action is the same as the first except that it involves the processing tax on bags in which was shipped the flour involved in the first cause of action covering

deliveries made after August 1, 1933—the effective date of the processing tax on cotton—pursuant to contracts entered into before August 1, 1933. The tax on the cotton bags was on the plaintiff. Plaintiff paid the tax to defendant and defendant passed it on to the government. The same deficiencies in the allegations of the first cause of action are present here. The demurrers to the six alleged causes of action were properly sustained.

*By the Court.*—Order affirmed.