## SOUTHWESTERN SERUM CO. v. COMMISSIONER OF INTERNAL REVENUE.

## COLORADO SERUM CO. v. SAME.
### Nos. 1883, 1894.

Circuit Court of Appeals, Tenth Circuit.
Jan. 4, 1940.

844

Robert C. Foulston, of Wichita, Kan., and Geo. T. Buckingham, of Chicago, Ill. (Paul E. Shorb, H. Thomas Austern, and E. Marshall Nuckols, Jr., all of Washington, D. C., on the briefs), for petitioners.

F. E. Youngman, Sp. Asst. to Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., and J. Louis Monarch, Sp. Asst. to Atty. Gen., on the briefs), for respondents.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

These are two separate petitions to review orders of the United States Processing Tax Board of Review in accordance with the provisions of Title VII of the Revenue Act of 1936, 49 Stat. 1648, 1747, 7 U.S.C. A. §§ 623 note 644–659. One petitioner paid processing taxes for the period commencing February 1, 1934, and ending August 31, 1934, and for the period commencing April 1, 1935, and ending August 31, 1935, in the amount of $10,837.42; and the other petitioner paid like taxes for the period commencing February 1, 1934, and ending October 31, 1935, in the amount of $35,853.-92. Separate claims for refund were submitted to the Commissioner of Internal Revenue, and disallowed. Separate petitions to review the action of the Commissioner were seasonably lodged with the Board. Except in respect to the period of time covered and the amount of taxes paid, the allegations in the two petitions were substantially identical. Accordingly, they may be stated together. These facts were alleged in the petitions and the attached copies of the claims. Petitioners were at all material times engaged—one at Wichita, Kansas, and the other at Denver, Colorado—in the business of manufacturing anti-cholera serum and other serum for use on hogs. In the course of that business they raised, fattened, purchased in the open market, inoculated, and then slaughtered hogs, and used the blood extracted from them in the manufacture of the serum. Immediately after the blood had been extracted, the carcasses were sold and delivered to Cudahy Packing Company. Live hogs were purchased at flat prices in the open market in competition with other buyers, including the Cudahy Company. There was no contract, understanding, or agreement, express or implied, between petitioners and the vendors from whom they purchased live hogs that any amount of processing tax should be included in or deducted from the prices paid, and no such amount was included or deducted. The prices which the Cudahy Company paid petitioners for the carcasses were the flat, open market prices computed on the live weight of the hogs, and paid solely to obtain the carcasses and for nothing else. Petitioners and the Cudahy Company did not have any contract, understanding, or agreement, express or implied, allocating any portion of the prices paid to processing taxes and no amount was added, allocated, or apportioned to such taxes, or stated in any sales invoice as a separate item or otherwise, or included in any identifiable manner in such prices. And the prices at which petitioners sold serum did not in any identifiable manner, or otherwise, include or recognize processing taxes. Processing taxes were paid on the total live weight of the hogs. The blood extracted for use in the manufacture of the serum had a relatively small weight and value when compared with the total weight and value of the carcasses. Due to these factors, petitioners were unable without financial assistance to finance the payment of the taxes imposed. To do so would have forced them to suspend business. In order that they might not be compelled to suspend business and the Cudahy Company thus lose valuable sources of hog carcasses, the Cudahy Company loaned and advanced to each petitioner sufficient money to enable it to pay the taxes asserted against it, and the money was used for that purpose. Peti-

tioners are definitely and unconditionally obligated to repay such advances, respectively, only to the extent that any of the taxes paid are refunded.

The Board dismissed the petitions for failure to allege the conditions necessary to authorize refunds in that it affirmatively appeared from such petitions that the burden of the amount of the taxes had been borne solely by the vendee of petitioners, and that petitioners had not repaid unconditionally such amount to such vendee.

The processing taxes which petitioners paid with the money advanced for that purpose by the Cudahy Company were imposed under the Agricultural Adjustment Act of May 12, 1933, 48 Stat. 31, 7 U.S.C.A. § 601 et seq. The act was declared unconstitutional in January, 1936. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. Thereafter Congress enacted Title VII of the Revenue Act of 1936, supra. Section 902 provides that no refund shall be made or allowed, pursuant to a court decision or otherwise, of any amount paid by or collected from a claimant as tax under the Agricultural Adjustment Act, unless such claimant establishes to the satisfaction of the Commissioner, or the satisfaction of the Board of Review in a case coming before it, or the satisfaction of the trial court in a case coming before the court, that he bore the burden of such amount and has not been relieved thereof or reimbursed therefor or shifted such burden, directly or indirectly, (1) through inclusion of such amount in the price of any article with respect to which a tax was imposed under the provisions of such act, or in any charge or fee for services or processing, (2) through reduction of the price paid for any such commodity, or (3) in any manner whatsoever; and that no understanding or agreement exists whereby he may be relieved of the burden of such amount, be reimbursed therefor, or shift it; or that he has repaid unconditionally such amount to his vendee (1) who bore the burden, (2) who has not been relieved thereof or reimbursed therefor or shifted it, and (3) who is not entitled to receive reimbursement from any source, or to be relieved of the burden in any manner.

The intent of the statute is plain. Its broad language indicates clearly a deliberate and studied legislative purpose to confine the right of refund to those who bore the burden of the payment of processing taxes wrongfully exacted, and to deny such right to all others. Petitioners paid money in extinguishment of such taxes, but the money was furnished for that purpose by the Cudahy Company with the understanding and agreement that petitioners would not repay it unless and only to the extent that it was refunded. That appears from the claims and the petitions, and it was freely admitted at the bar of this court in the course of oral argument. Petitioners did not bear the burden of the payment of the taxes even though they had the technical, legal title to the money with which such taxes were paid. They were out nothing when the taxes were paid, and they would be in nothing if refunds were made. They suffered no financial injury, and they seek no relief for their own benefit or gain. In rationale and effect, they seek refunds without having borne the initial burden of the taxes, and in doing so they are met with the letter and spirit of the statute.

It is contended that petitioners paid the taxes with their own money to which they had title as against the world; that the right to refund immediately arose and became vested; that under the procedure then existing and recognized by law they were required to show merely that the collection was illegal, and that the taxes were paid; and that if section 902, supra, is construed to make a substantive change in such right of petitioners, it is unconstitutional and void. The statute merely provides that only those who bore the burden of the illegal taxes and have not shifted such burden or been relieved of it in any manner shall be entitled to relief. It does no more than provide that refunds shall be made only to those who suffered injury and are therefore the real parties in interest. That is an element of the right to a refund of such taxes. The restriction of the right to claimants coming within that class does not infringe due process. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143; United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859.

Other questions are presented, but our conclusion upon those discussed eliminates need to consider them.

The decisions of the Board are severally affirmed.