*579 OPINION.
Black:
The issue presented is controlled by section 501 of the Revenue Act of 1936. The deficiencies in question were determined under subsection (a) (1) of section 501.
The Commissioner in his deficiency notice determined the extent of the shift of the burden of the Guffey tax under section 501 (e) (1) and method I of article 13 of Regulations 95, and concluded therefrom that petitioner had shifted to others the entire 1935 tax of $1,579.41 and $3,526.81 of the 1936 tax of $3,962.59. This was the method used in Tennessee Consolidated Coal Co., 46 B. T. A. 1035.
The parties agree, however, that the statutory presumption of the extent of the shift should be determined under section 501 (e) (2) and method II of article 13 of Regulations 95. This is apparently due to the fact that petitioner in filing its unjust enrichment tax returns had elected to compute its net income under section 501 (c) (2). In this connection article 13, among other things, provides:
The extent to which a Federal excise tax burden was shifted to others and therefore the extent to which net income computed pursuant to article 7, 8, or 9 may be subject to tax is presumed to be an amount computed in accordance with one of two alternative methods. The first method is provided in section 501 (e) (1) and the second in section 501 (e) (2). If the taxpayer elects under section 501 (c) to compute net income under paragraph (2) of that section, then in computing the extent to which Federal excise tax burdens were shifted, the method provided for in section 501 (e) (2) should be followed. Similarly, if the method of computing net income provided for in section 501 (c) (1) was adopted, then in computing the extent to which Federal excise tax burdens were shifted, section 501 (e) (1) should be followed.
The article then sets out in considerable detail how the computations should be made under method I and method II, respectively. The latter method was used in Norwood-White Coal Co., 45 B. T. A. 638.
Although the parties agree that method II should be used in the instant proceeding, they do not agree upon the proper “unit of commodity” that should be used in making the computations. Petitioner contends that the proper unit of commodity is the “sales dollar,” whereas the Commissioner contends it is the “ton of coal.” If tons of coal mined are to be used as the units in respect of which the tax was imposed, the resulting prima facie showing is, as set out in our findings, that petitioner shifted the entire burden of the tax for both years. If, however, in making the computation the sales dollar is used as the unit in respect of which the tax was imposed, the resulting presumption is, as shown by petitioner’s Exhibit 10, admitted in evidence, that petitioner shifted the burden of $1,328.35 of the tax for 1935 and of $3,753.24 of the tax for 1936. On this point we agree with the Commissioner, and we have made a computation of the margin *580 in our findings of fact. Section 501 (e) (2) of the Revenue Act of 1936 reads in part as follows:
* * * from the aggregate selling price of all articles with respect to which such Federal excise tax was imposed and which were sold by him during the taxable year (computed without deduction of reimbursement to purchasers with respect to such Federal excise tax) there shall be deducted the aggregate cost of such articles, and the difference shall be reduced to a margin per unit in terms of the basis on which the Federal excise taw was imposed. The excess of such margin per unit over the average margin (computed for the same unit) shall be multiplied by the number of such units represented by the articles with respect to which the computation is being made; * * * [Italics ours.]
The words which we have italicized above are the provision of the statute upon which petitioner relies as a basis for its contention that in the instant case the unit for margin comparisons should be sales dollars instead of tons of coal. In this connection petitioner says:
It is perfectly apparent, therefore, that the excise tax imposed by the Guffey law was imposed on the basis of selling price or sales value, and that under the express provisions of Section 501 (e) (2) in order to reduce the gross margin to margin per unit, sales dollars rather than tonnage sold is the correct divisor. * * *
We think petitioner misconstrues the purpose of the use of the words “in terms of the basis on which the Federal, excise tax was imposed.” For example, in E. W. Stockton, 44 B. T. A. 514, the taxpayer was not selling barrels of flour, he was selling baking products such as bread, pies, and cakes. But the margin comparison was not made in terms of sales dollars of bread, pies, and cakes. It was made in terms of “barrels” of flour. Therefore, what the taxpayer was selling in that case had to be, in accordance with the statute in question, “reduced to a margin per unit in terms of the basis on which the Federal excise tax was imposed.”
Article 17 of Regulations 95, relating to the tax on unjust enrichment, is in line with our understanding of this particular provision of the statute. That article reads in part as follows:
Articles expressed in terms of units on the basis of which the Federal excise tax was imposed. — Articles, for example, handkerchiefs, cigars, hams, flour, cornstarch, may be expressed in terms of the commodity or material from which they were manufactured or produced. Thus, handkerchiefs, cigars, or hams may be expressed in pounds (or fraction of a pound) of cotton, tobacco, or hog, respectively; and flour and cornstarch may be expressed in bushels or pounds (or fraction of a bushel or pound) of wheat or corn, * ⅜ *.
Petitioner was producing and selling coal. The unit of measurement of that commodity is the ton, and it was tons of coal that petitioner sold. The Guffey tax was imposed upon the sale of coal, and was measured by a given percentage of the sale price at the mine, or, in the case of captive coal, the fair market value of such coal at the *581 mine. It seems reasonable that the margin unit should be tons of coal and that is what the Commissioner has used in making the margin computations here. We hold, therefore, that the statutory presumption, as shown by the margin computations, is that petitioner shifted the entire burden of the Guffey tax for both years, and, unless this presumption is rebutted, the deficiency for 1935 will stand and the Commissioner’s claim for an increased deficiency for 1936 will be allowed if any increased deficiency is shown to be due.
Section 501 (i) provides that either party may rebut the presumption established by subsection (e) by proof of the actual extent to which the taxpayer shifted to others the burden of the tax, and that “Such proof may include, but shall not be limited to” the character of proof set out in subsections (i) (1) and (i) (2).
We think that petitioner has proven that it did not shift any of the Guffey tax applicable to the sales made to L & N, the Buddeke Co., and Bonnie Bros., Inc. The tax applicable to such sales for the period November 1 to December 31, 1935, is $323.97, and is computed as follows:
[[Image here]]
The tax applicable to such sales for the 20-week period January 1 to May 18, 1936, is $734.70, and is computed in the same manner as the tax applicable to the period in 1935. These sales were made on contracts entered into prior to the enactment of the Guffey Act and during the effective period of that act petitioner did not increase the price of or lower the grade of coal sold to these customers. To the extent of the tax applicable to such sales the presumption has been rebutted. Tennessee Consolidated Coed Co., sv.pra.
We do not think, however, that petitioner has rebutted the statutory presumption attaching to the Guffey tax applicable to its remaining sales. These were spot sales and were made at the daily market price of coal prevailing as of. the date of sale, and, until proven otherwise, the prices received for such sales must, under the marginal computations made under section 501 (e) (2), be presumed to include the Guffey tax imposed but not paid. In other words, petitioner’s “selling price less cost of material” for the taxable years 1935 and 1936 exceeded its “selling price less cost of material” for the six prior years *582 by $0.3908797 per ton for 1935 and by $0.3360688 per ton for 1936<. A part of this excess was due to the increased cost of labor during the taxable years over the cost of labor for the base period. During the taxable years petitioner’s cost of labor per ton was $1,227 for 1935 and $1,207 for 1936. During the base period of six years it was an average of $0,973 per ton. This represented an increase per ton for the taxable years over the base period of $0,254 and $0,234, respectively, which would still leave unexplained a substantial part of the statutory excess of margin per unit as follows:
[[Image here]]
The Federal excise tax imposed by section 3 of the Guffey Act for 1935 and 1936, when reduced to a per ton basis, amounts to approximately 3 cents per ton for both years, computed as follows:
$1,579.41 divided by 51,579.40 (tons) equals $0.0306209
$3,962.59 divided by 183,125.85 (tons) equals $0.0297657
It is at once apparent that the excess of margin per unit in this proceeding for both years is large enough to absorb the entire increased cost of labor, and in addition thereto the Guffey tax, with a remaining unexplained balance of excess of margin per unit of $0,107 for 1935 and $0,072 for 1936.
Petitioner has offered no proof of other increases in costs of production except labor, and, even assuming that the entire increased cost of labor was shifted to others, there is a considerable excess of margin per unit or “cushion” left for absorption of the tax. Cf. Tennessee Consolidated Coal Co., supra.
Petitioner in its brief makes the point that the average realization price per ton of coal was less during the months immediately following the effective date of the Guffey tax than it was in the month of October 1935, just prior to the effective date of the tax. From this premise petitioner strongly argues that the presumption which follows the marginal computations under the statute has been rebutted. If this decrease in the average realization price per ton during the period named had been due to decreases in price which petitioner put into effect during such period, it would indeed be strong argument to support petitioner’s contention that it did not pass on to its customers the Guffey tax. Cf. Clinchfield Coal Corporation, 47 B. T. A. 151, a case where the taxpayer corporation proved that it decreased the selling price of its coal 20 cents per ton on November 25, 1935, a short time after the Guffey tax went into effect. But petitioner has not *583 shown that the decrease in the average realization price per ton oí coal during the period named was due to decreases in price which it put into effect, but, on the contrary, we think the evidence shows that this decrease was due to a higher percentage of the smaller sizes of coal being sold during the months in question than during the month of October 1935. This being the state of the evidence, we do not think that petitioner has successfully rebutted the presumption raised by the marginal computations made under the statute.
Petitioner concedes that on or about October 1, 1935, it increased its price on spot sales of coal by an amount sufficient to pass on to its customers an estimated increase of 15 cents per ton in the cost of mining and loading coal by reason of wage increases put into effect at that time.
Petitioner’s president, D. B. Cornett, who was the moving spirit in the conduct of petitioner’s business, testified however that in making this increase in the selling price of its spot coal, it was not intended to include anything for the Guffey coal tax. We have no reason to doubt the good faith of this testimony. The fact remains, however, that the price increases which were put into effect on the selling prices of spot coal appear to have been in excess of what was required to take care of the increased labor costs. These price increases seem ample to cover the Guffey coal tax as well. The margin computations, as we have already pointed out, seem to well establish that fact.
Therefore, it seems immaterial to us that in making these increases in price in the sales of its spot coal it was only the intention of petitioner to shift to its customers the increased wage cost and not the small increase per ton which resulted from the imposition of the Guffey tax. In the recent case of United States v. Poindexter & Sons Merchandise Co., 128 Fed. (2d) 992, the taxpayer was making a similar contention as to the product which it was selling.
The court, in ruling against the contention of the taxpayer that it had succeeded in rebutting the presumption that it had shifted the tax to its customers in the form of an increase in the selling price of the articles sold (in that case cotton-content merchandise), among other things, said:
The concrete definitely controlling consideration therefore is the established fact that the inventory valuations and the prices were raised coincident with the tax, and by the collection of the increased prices the tax was passed on. Though the plaintiff is persuaded that it did not intend to pass the tax on, and that it raised its inventory and prices solely to re-establish normality and to offset its increased expenses and bad debts and because the rise in the market permitted it to do so, its proof was insufficient to establish that it had not been' relieved of the tax burden, nor reimbursed therefor, nor that such burden had not been shifted directly or .indirectly within the intendment of the statute. Anniston Mfg. Co. v. Davis, 301 U. S. 337; Luzier’s, Inc. v. Nee, 8 Cir., 106 F. (2d) 130; Honorbuilt Products Co. v. Commissioner, 3 Circ. 119 F. (2d) 797; C. M. McClung & Co. v. United States, C. Clms. 35 F. Supp. 464.
*584 So, to sum up, except as to the tax on coal sold to the L & N, the Buddeke Co., and Bonnie Bros., Inc., we hold that petitioner has not successfully rebutted the presumption raised by the margin computations.
Petitioner’s claim that the tax imposed by title III of the Revenue Act of 1936 is unconstitutional because of its indefiniteness and uncertainty can not be sustained. Tennessee Consolidated Coal Co., swpra.
The deficiencies should be recomputed accordingly.

Decision will be entered v/nder Rule 50.