**LEE RUBBER & TIRE CORP. v. UNITED STATES.**

**Civ. No. 2709.**

District Court, E. D. Pennsylvania.

Feb. 26, 1943.

James A. Montgomery, Jr., and Clement J. Clarke, Jr. (of Pepper, Bodine, Stokes & Schoch), both of Philadelphia, Pa., for plaintiff.

Frederic G. Rita, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe, Sp. Asst. to Atty. Gen., Gerald A. Gleeson, U. S. Atty. and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action for a refund of floor stocks taxes on cotton fabric owned by plaintiff on August 1, 1933. I make the following special findings of fact:

1. Plaintiff is engaged principally in the manufacture and sale of automobile tires, a constituent part of which is cotton fabric.

2. On August 1, 1933 plaintiff was the owner of 543,441 pounds of cotton fabric on which it paid a tax of $24,029.06 under the floor stocks tax imposed by the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq.

3. After the Agricultural Adjustment Act was declared unconstitutional, plaintiff duly filed with the Collector of Internal Revenue its claim for refund of the tax paid by it and on August 14, 1940 this claim was allowed in the amount of $4,312.84 and the balance was disallowed.

4. The cotton fabric upon which the tax was paid was used by plaintiff in the manufacture of tires which plaintiff sold between the months of February and May 1934.

5. Between August 1933 and February 1934 the plaintiff sold the tires which it had on hand on August 1, 1933.

6. The amount of the tax upon the cotton fabric used in the manufacture of the average tire was approximately $.2169.

7. On June 8, 1933 plaintiff issued a price list establishing the prices at which its tires were to be sold.

8. On July 27, 1933 plaintiff issued a new price list increasing its prices from those set forth in the June 8th price list by more than ten per cent.

9. The amount per tire of the price increase of July 27, 1933 was in excess of the increased cost per tire due to the tax on the cotton fabric owned by plaintiff on August 1, 1933.

10. Between February and May of 1934 plaintiff did not increase the net sales price of its tires over the prices in effect on August 1, 1933.

11. During the two year period immediately prior to August 1, 1933 plaintiff's operating profit per tire was $.15.

12. During the period from August 1, 1933 to February 1, 1934 plaintiff's net operating profit per tire was $.20.

13. During the period from February to May of 1934 plaintiff's net operating loss per tire was $.09.

Discussion.

The sole issue in this case is whether the plaintiff has established that it did not shift the burden of the floor stocks tax it paid on the cotton fabric owned by it on August 1, 1933. The Act of 1936, c. 690, 49 Stat. 1747, § 902, 7 U.S.C.A. § 644, conditions the right to a refund of taxes paid under the provisions of the Agricultural Adjustment Act[1], which was held unconstitutional[2], upon a showing by the taxpayer that " * * * he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant * * * in the price of any article with respect to which a tax was imposed under the provisions of such Act [this chapter], or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act [this chapter] * * * or (3) in any manner whatsoever * * *".

The evidence establishes that on July 27, 1933 plaintiff revised its prices upward in an amount in excess of the amount of the tax. Plaintiff contends, however, that despite this increase, it bore the burden of the tax because: (1) this price increase went into effect prior to August 1, 1933, the date of the incidence of the tax and therefore cannot be considered as designed to shift the burden of the tax; (2) substantial increases in the cost of rubber and raw cotton had occurred since March of 1933, and these increases offset the price increase, and (3) the tires in the manufacture of which the cotton fabric, upon which the floor stocks tax was paid, was used were sold between February and May of 1934, during which period there was no increase

[1] Act of May 12, 1933, c. 25, 48 Stat. 31, 7 U.S.C.A. § 601.
[2] United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

in the sales price and there was a decrease in the net return for the tires sold.

The first contention of the plaintiff, although strenuously urged, carries little conviction. Surely the failure to have the date of the price increase coincide precisely with the date of the incidence of the tax has little bearing on the question whether the tax was borne by the plaintiff or shifted to its purchasers. It has indeed but slight bearing on even the more limited purpose of showing that plaintiff did not intend to pass the burden of the tax to its purchasers. But even if this were established as a fact, the Circuit Court of Appeals for this circuit has ruled that a purpose or intention specifically to shift the burden of the tax by a price increase is immaterial where such is the effect of the increase. In Honorbilt Products Co. v. Commissioner, 3 Cir., 119 F.2d 797, at page 798, Judge Biggs, speaking for the Court, said: "The testimony of the petitioner's president is simply that the price was increased because the Simmons Mattress Company raised the price of its competing mattress. Whether the petitioner intended it or not, the burden of the tax was not borne by it, but was borne by the purchaser of its mattresses who paid the increased price. In our opinion the motive for the increase in price is immaterial and it makes no difference that Honorbilt's president testified that processing taxes were not taken into consideration in fixing the price per mattress."

Plaintiff's second contention is that between March of 1933 and July 27, 1933 there had been large increases in the price of both rubber and raw cotton which warranted and offset the July 27th price increase. It did not show, however, that these cost increases had not been considered in the prices established in the price list which plaintiff had issued as recently as June 8, 1933, and that since that date there had been increases in cost, other than the impending tax, which warranted a higher price scale on July 27. Nor did it attempt to show the relationship between the amount of such increases and the amount of the price increases. Indeed, from plaintiff's own evidence it appears that the principal factor governing the prices established by it was the scale of prices established by its competitors. Plaintiff is what is known in the industry as a replacement manufacturer which sells tires after an automobile owner has purchased a new automobile with tires of another manufacturer on it. Accordingly, plaintiff revised its prices after the major companies announced a price revision, and the increases in its price list of July 27, 1933 followed by several weeks a general price increase in the industry. Plaintiff did not show that the price increase initiated by the other companies did not have the purpose or effect of shifting the burden of the tax to their customers and, without such a showing, or a showing of the extent of any increased costs since the last price list it had issued, plaintiff has not by this evidence established that it did not shift the burden of the tax.

The final ground upon which the plaintiff contends that it did not shift the burden of the tax is that during the period in which the tires containing the cotton fabrics on which the tax was imposed were sold, plaintiff experienced a decline in net return per tire in excess of the amount of the tax. These tires were sold between February and May of 1934, since between August 1, 1933 and February 1, 1934 plaintiff sold the tires already manufactured and in stock on August 1, 1933. Plaintiff offered testimony that during the period of February to May of 1934 it received no higher prices for its tires despite a published price increase. It further offered proof that during this period it sustained a net operating loss of $.09 per tire as against a net operating profit of $.15 per tire during the two year period prior to August 1, 1933, this $.24 spread being slightly in excess of the amount of the tax on the cotton fabric used in each tire.

Granting all this, it does not establish that plaintiff did not shift the burden of the tax. Leaving aside the fact that a differential in net return between the two periods might be the result of any number of extraneous factors rather than of the absorption of the tax, there is no reason why the question of whether the burden was shifted must be determined solely on the basis of the plaintiff's profit or loss experience in the period when the tires using the taxed cotton fabric were sold. If, because it had finished tires on hand, plaintiff was able to shift the burden of the tax before that burden was actually reflected in its cost, it has done so as effectively as if it waited until the period when the "tax-paid" tires were sold. The fact that competitive conditions enabled

plaintiff to shift the burden of the tax in the earlier period does not enable it to prevail in its contention that its profit and loss experienced in the period when the "tax-paid" tires were sold establishes that it absorbed the tax.

 Defendant has filed a counterclaim to recover $4,312.84, the amount of a refund of the tax to which the Commissioner is alleged to have erroneously determined the plaintiff was entitled. Defendant offered no proof of its allegations and its counterclaim must therefore fail.

I make the following conclusions of law:

1. Plaintiff has failed to establish that it did not shift the burden of the floor stocks tax on the cotton fabric which it owned on August 1, 1933 as required by the Act of 1936, c. 690, 49 Stat. 1747, § 902, 7 U.S.C.A. § 644, and it is therefore not entitled to the refund for which this suit was brought.

2. Defendant has failed to establish that the refund of the floor stocks tax allowed by the Commissioner was erroneous and therefore defendant's counterclaim cannot be sustained.

3. Judgment is hereby entered for the defendant on the claim of the plaintiff and for the plaintiff on the counterclaim of the defendant.