## ARKWRIGHT MILLS v. UNITED STATES.

### No. 302.

District Court, W. D. South Carolina.

May 10, 1943.

J. S. Y. Ivins, of Washington, D. C., Merrill C. Patten, of Greenville, S. C., and Richard B. Barker, of Washington, D. C., for plaintiff.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to the Atty. Gen., and O. H. Doyle, U. S. Atty., and E. P. Riley, Asst. U. S. Atty., both of Greenville, S. C., for the United States.

WYCHE, District Judge.

In this case plaintiff brings suit against the United States for the refund of floor stock taxes paid with respect to cotton content of finished goods on hand and goods in process on August 1, 1933. By consent of the parties, the cause was referred to Harvey W. Johnson, Esq., as Special Master, to take the testimony, and make separate findings of fact and conclusions of law, and report the same to this court. In compliance with the order of reference the Master duly filed his report, together with the testimony, and separate findings of fact, in which he concluded that plaintiff was entitled to judgment in the sum of three thousand seventy-three and 59/100 ($3,073.-59) dollars, with interest according to law.

The matter is now before me upon plaintiff's motion to confirm the report, and for judgment accordingly, and defendant's objections to the report. The facts are substantially as follows.

Plaintiff operates a cotton mill, manufacturing certain types of cloth. On July 31, 1933, plaintiff had inventories of finished goods on hand and goods in process of manufacture, the cotton content of which was subject to a floor stock tax under the Agricultural Adjustment Act, May 12, 1933, P.L. No. 10, 73d Congress, 48 Stat. 31, 40, 7 U.S.C.A. §§ 601, 616, when the Secretary of Agriculture as of August 1, 1933, put the taxes on cotton into effect. Plaintiff accordingly paid floor stock taxes aggregating $10,429.37, of which $395.05 was later credited back for reasons which do not concern us. On January 6, 1936, the Agricultural Adjustment Act taxes were held unconstitutional by the Supreme Court. United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914. The Congress thereafter enacted Title VII of the Revenue Act of 1936, 7 U.S.C.A. § 644 et seq., providing conditions on allowance of refunds of the unconstitutional taxes, including the condition in section 902 of that Act that the taxpayer must establish that

he had borne the burden of the tax and not shifted it. Plaintiff filed a claim for refund which was rejected by the Commissioner of Internal Revenue, on the theory that plaintiff had failed to demonstrate that it had borne the burden of any part of the floor stock taxes. So plaintiff brought suit in this court.

Plaintiff's business practice was to sell its goods, usually, through a commission house. The commission house would inquire if plaintiff would accept an offer for stated goods at specified prices, plaintiff's officers would consult the Daily News Record (a trade paper which publishes quotations of prices at which cotton goods are sold) to compare the offer with current prices, and decide whether or not to accept the offer. It would not take substantially less (nor could it get substantially more) than the market prices quoted in the Daily News Record.

In this court plaintiff seeks refund of only $3,073.59 of the $10,034.32 (net) floor stock taxes paid by it, making no effort to prove that it absorbed or bore the burden of the balance.

The bulk of plaintiff's August 1, 1933, inventory was sold under contracts which enabled it (by virtue of the provisions of section 18 of the Agricultural Adjustment Act) to add the tax to the contract price and thus shift the burden to the customer. In computing the refund to which it claims to be entitled, plaintiff's accountant eliminated these items, and concerned himself only with the items which were not sold under contracts in existence before August 1, 1933. He took the quoted market prices at July 31, 1933, and compared them with the sale price actually realized on each invoice, adding the tax attributable to the cotton content of goods in each invoice to the July 31 quotation and comparing the sum with the sale price. If the sale price was sufficient to cover both the July 31 quotation and the tax, the entire burden of the tax was shifted. If the sale price was less than the July 31 quotation, the entire burden of the tax was borne (the burden in no case being claimed to exceed the amount of the tax). Where the sale price exceeded the July 31 quotation, but did not exceed the quotation by as much as the the amount of the tax, the amount of the tax was added to the July 31 quoted price and from this was subtracted the price realized on the sale. The difference reflects the extent of the tax burden borne by the plaintiff on such a sale. The sum of the burdens borne by plaintiff, so computed, was $3,073.-59.

■ It is my opinion that this is a reasonable method, and sufficient to determine the amount of the tax burden borne by plaintiff and not shifted to its customers.

Although for certain purposes it has been said a tax cannot be "passed on",[1] there can be no question that the *economic* burden of a tax can be shifted or absorbed by the seller of a taxed item. And it is clear that this is what the Congress had in mind in enacting section 902 of the Revenue Act of 1936.[2] If there could be any doubt from the face of the statute that the Congress meant the *economic* burden, it is resolved by the legislative history of the provision[3] and from the fact that when the constitutionality of section 902 was before the Supreme Court in the Anniston case the

[1] N.C. in Lash's Products Co. v. United States, 278 U.S. 175, 176, 49 S.Ct. 100, 73 L.Ed. 251:

"The phrase 'passed the tax on' is inaccurate, as obviously the tax is laid and remains on the manufacturer and on him alone. * * * The purchaser does not pay the tax. He pays or may pay the seller more for the goods because of the seller's obligation, but that is all."

[2] "No refunds shall be made * * * unless the claimant establishes * * *

"(a) That he bore the burden of such amount and has not been relieved thereof nor reimbursed therefor nor shifted such burden, directly or indirectly, (1) through inclusion of such amount by the claimant, or by any person directly or indirectly under his control, or having control over him, or subject to the same common control, in the price of any article with respect to which a tax was imposed under the provisions of such Act, or in the price of any article processed from any commodity with respect to which a tax was imposed under such Act. * * *."

[3] In the Senate Committee Report the following appears:

"Section 902 adheres to the basic principle that no refunds may be made of amounts collected under the Agricultural Adjustment Act, except to the extent to which the claimant establishes * * * that he bore the economic burden of such amounts." No. 2156, 74th Congress, 2nd Session, reproduced in Internal Revenue Cumulative Bulletin 1939-1 (Part 2), 678, 700.

Government justified the statute on the ground that it referred to the *economic* burden.[4]

In the Anniston case the taxpayer, claiming refunds of processing taxes and floor stock taxes, asserted that the proof of non-shifting required by the 1936 Act, constituted a burden which no taxpayer could meet. The Government argued that a taxpayer could show by reasonable approximation the extent of the economic burden that was borne or shifted, and offered a formula for the computation in the case of floor stock taxes:[5] "Generally, a simple comparison of the sales prices before and after the imposition of the tax should be sufficient. The taxes were imposed on goods held ready for sale, and change or lack of change in the price on these goods would ordinarily be conclusive as to tax shifting or absorption."

Plaintiff claims to have followed this formula. Defendant admits the soundness of the formula but asserts that plaintiff has departed from it in two respects. First, says defendant, plaintiff has not shown its *prices* before the impact of the tax, but only market quotations. But plaintiff did not fix its own prices like the manufacturers of Lee Tires[6] or Honorbilt Mattresses[7] and establish them for long periods of time. Its prices were fixed for it by market conditions, just like the prices for stock exchange securities. Plaintiff could have sold "at the market" or could have held off for a better price, but it could not have sold on any day for a price substantially higher than the quoted prices for that day. The goods plaintiff had on hand on July 31, 1933, had an economic value to it on that day of the quoted prices for that day, whether it wanted to sell at those prices or not, and regardless of whether its cost of producing the goods was more or less than those prices. Those were the prices it would have been awarded by the courts if the goods had been taken by eminent domain, or if they had been destroyed and an insurer was called upon to cover the loss. Those were the prices which plaintiff could have realized on August 1, 1933, *but for the tax*. A comparison of what plaintiff would have got, but for the tax and what it did get, after having become liable for the tax, should be all we need to know in order to see what portion of the tax burden it absorbed and what portion it shifted.

Defendant's next argument is that under the formula quoted from the brief in the Anniston case, we should look to quoted prices on August 1, which were approximately the July 31 prices plus the tax, and say that on August 1 plaintiff raised its prices by the amount of the tax, thereby shifting the burden of the tax, and that no subsequent reduction in price could be attributed to the tax, but all must be attributed to the competitive market. This is fallacious in that it ignores realities. Whether a tax burden is absorbed or shifted must be judged by what happened, not by what was hoped for. If the market refused to take goods at pre-tax prices plus tax, and prices had to come down to pre-tax prices plus part of the tax, then the burden of only that part was shifted to the purchasers. They cannot be said to have borne the burden of anything they refused to pay for.

■ Defendant claimed to have evidence that plaintiff had shifted the burden of the tax in some correspondence in which its sales agent said that it was understood that "price includes tax." Plaintiff produced evidence, explaining that this only meant that there would be no further billing for the tax, but this was really unnecessary, for what was meant or said or understood is not the test of whether a tax burden is shifted. C. B. Cones & Son Mfg. Co. v. United States, 7 Cir., 123 F.2d 550. The test is the economic difference between what a seller would have realized if there had been no tax and what he did realize after becoming liable for the tax. Arkwright Mills v. Commissioner, 4 Cir., Dec. 18, 1941, 127 F.2d 465. In the cases relied on by defendant,[8] the vendors raised their prices by more than the amount of the tax, kept them up, and sold at the higher prices.

If any of the burden was shifted, it was by the collection from purchasers of an amount in excess of what the goods would have sold for if there had been no tax. The question is one of objective economic fact

---

4 Brief for Respondent in Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S. Ct. 816, 81 L.Ed. 1143, pp. 120, 122, 132, 137, 167.

5 Brief, p. 138, footnote 71.

6 Cf. Lee Tire & Rubber Corp. v. Unit-ed States, D.C.S.D.Pa., Feb. 26, 1943, 49 F.Supp. 6.

7 Cf. Honorbilt Products, Inc., v. Commissioner, 3 Cir., 1941, 119 F.2d 797.

8 See footnotes 6 and 7, and United States v. H. T. Poindexter & Sons Merchandise Co., 8 Cir., 1942, 128 F.2d 992.

rather than one of subjective thoughts or statements relative to whether the tax burden is shifted or absorbed.

Defendant also suggested that plaintiff's costs should have been shown, in order to test whether the sales resulted in profit or not. The question of whether plaintiff made a profit or a loss is beside the point. It could have had costs far above the July 31 market price, but have been able to sell for the July 31 price plus the amount of the tax, thus shifting the tax although sustaining a loss, or vice versa, it could have expected a profit of more than the amount of the tax out of the July 31 prices, and have absorbed the tax by foregoing part of that profit, and still have had some profit after absorbing the whole burden of the tax.

It is frequently impossible to find exact bases for the computation of taxes, but reasonable approximations are accepted by the courts. Utah Power & Light Co. v. Pfost, 286 U.S. 165, 52 S.Ct. 548, 76 L.Ed. 1038; Burnet v. Niagara Falls Brewing Co., 282 U.S. 648, 51 S.Ct. 262, 75 L.Ed. 594; United States v. Ludey, 274 U.S. 295, 47 S.Ct. 608, 71 L.Ed. 1054. The method adopted by plaintiff for determining the amount of tax burden borne by it seems to reflect as close an approximation to the truth as could be accomplished in the premises.

For the foregoing reasons, I accept the separate findings of fact of the Master, and adopt his conclusions of law thereon, and direct the entry of judgment in favor of the plaintiff in the sum of three thousand, seventy-three and 59/100 ($3,073.59) dollars, together with interest according to law.