454

## UNITED STATES v. ARKWRIGHT MILLS.
### No. 5165.

Circuit Court of Appeals, Fourth Circuit.
Dec. 14, 1943.

Robert R. Reynolds, Jr., Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Frederic G. Rita, Sp. Assts. to the Atty. Gen., O. H. Doyle, U. S. Atty., and W. M. Walters, Asst. U. S. Atty., both of Anderson, S. C., on the brief), for appellant.

James S. Y. Irvins, of Washington, D. C., (Merrill C. Patten, of Greenville, S. C., and Richard B. Barker, of Washington, D. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Arkwright Mills (hereinafter called Arkwright), manufacturers of cotton cloth, paid federal floor stock taxes levied under the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq., on a stock of cotton goods which it then had on hand. In United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, the United States Supreme Court held that the taxing provisions of this act were unconstitutional and void. Congress, in the Revenue Act of 1936, 7 U.S.C.A. § 644 et seq., provided for the refund of these taxes already paid on condition that the taxpayer, seeking such refund, must show that he has borne the burden of the tax sought to be recovered.

Arkwright instituted a civil action to recover such taxes in the United States District Court for the Western District of South Carolina. The District Court referred the case to a special master, who filed a formal report, finding that Arkwright was entitled to recover taxes (as to which Arkwright had borne the burden of the tax) in the sum of $3,073.59. This report was confirmed by the District Court, sitting without a jury, and judgment for $3,073.59 was entered against the United States in favor of Arkwright. The opinion of the District Court is reported in 49 F. Supp. 970. An appeal has been taken by the United States.

The only question before us is whether this finding of fact by the District Court (that to the extent of the judgment Arkwright has borne the burden of the tax without shifting this burden to the buyers of the goods) is "clearly erroneous." Unless the finding be clearly erroneous, we cannot set the finding aside. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c. The question is not too easy of solution, but we think this finding is not "clearly erroneous."

Arkwright, in order to ascertain the extent to which it had borne the burden of the tax, added to the market prices of the products (then on hand) quoted for July 31, 1933 (the day before the incidence of the tax) the amounts of the tax paid. This we shall call the basic figure. As these goods were later sold, Arkwright compared the prices received upon the sale of the

goods with the basic figure. If, then, the selling price was less than the basic figure, Arkwright concluded that it had borne the burden of the tax to (but only to) the extent of the difference.

In Anniston Mfg. Co. v. Davis, 301 U.S. 337, 352, 57 S.Ct. 816, 823, 81 L.Ed. 1143, Chief Justice Hughes adverted to the difficulties inherent in the present situation and said: "When the Congress requires the claimant, who has paid the invalid tax, to show that he has not been reimbursed or has not shifted its burden, the provision should not be construed as demanding the performance of a task, if ultimately found to be inherently impossible, as a condition of relief to which the claimant would otherwise be entitled. There is ample room for the play of the statute within the range of possible determinations. Impossibility of proof may not be assumed. It cannot be doubted that the requirement has appropriate and valid effect in placing upon the claimant the duty to present fully all the facts pertaining to the question of the shifting of the burden of the tax and in denying relief where the facts justify a conclusion that the burden has been shifted from the claimant to others."

And, in Arkwright Mills v. Commissioner, 4 Cir., 127 F.2d 465, 468, Circuit Judge Soper, speaking for this court, in connection with the refund of processing taxes on cotton said: "Moreover, there is no novelty or vice in the hypothetical approach to the ascertainment of a person's rights or the extent of damage wrongfully imposed upon him. Valuation of property involves the ascertainment of a hypothetical selling price. Breach of contract often involves a hypothetical loss of profits. Personal injury often requires an estimate of earnings that would have been made had the injury not occurred. Frequently the investigation of these matters is of such difficulty that mathematical certainty in the determination of amounts is impossible; but rights are not lost thereby, and it becomes the duty of the courts to find the relevant facts and to base a seasoned judgment upon them."

■ As the District Judge [49 F.Supp. 973] below pointed out (with citations): "It is frequently impossible to find exact bases for the computation of taxes, but reasonable approximations are accepted by the courts." In the Anniston case, supra, the government (brief, page 138, footnote 71) advanced this formula: "Generally, a simple comparison of the sales prices before and after the imposition of the tax should be sufficient. The taxes were imposed on goods held ready for sale, and change or lack of change in the price on these goods would ordinarily be conclusive as to tax shifting or absorption."

Counsel for the United States in the instant case admit the soundness of this formula.

Arkwright paid these taxes upon a specific stock of goods then on hand. A refund was claimed and allowed only as to sales of parts of this specific stock. These sales were all made within a period of less than six weeks after the date of the incidence of the tax. During this period the cost of two elements, which play, unquestionably, a large part in determining the market price, rose, and yet the market price of these goods fell. These two elements were the cost of raw cotton and the costs of labor in processing the cotton. The goods were of a staple nature, not normally subject to sudden and material changes in price. Then, too, these goods were not sold under trade names, nor were they goods whose price varies widely through swift changes due to the capricious choice or fickle fancy of the buying public. Arkwright was not in a position to control, or even to affect materially, the market price of these goods at a particular time. Nor could Arkwright sell the goods at any figure substantially above this market price, which was periodically reported in current trade journals.

■ We reject the contention of the United States that the cost of these goods to Arkwright is here of any consequence. That is quite beside the mark. We fully agree with the United States that there is no guarantee that, after the imposition of the tax, the price will remain stable, save insofar as that price is affected by the tax. We are fully conscious of those two classic factors of supply and demand and the part they play in fixing the market price of commodities. Nor are we altogether ignorant of the complex by-play of numerous forces, and the importance of the roles they assume in that often vivid drama of market price. We are quite certain, too, that the formula here adopted by Arkwright would not, amid the Protean vicissitudes of time and circumstance, always reflect the precise effect of the tax on the market price.

456

The case of Arkwright would have been greatly strengthened by the introduction of expert testimony (if that were available) to the effect that during the period in question there were no powerful extrinsic factors at work which might in themselves account for the fall in the market price of cotton goods. But, even in the absence of such proof, we think, Arkwright under the facts and circumstances of this case (to which we specifically limit this opinion) made out at least a prima facie case. If the United States had (or could have) produced any evidence as to the presence or effect of any such powerful extrinsic factors, that privilege was, of course, wide open.

We agree with the District Court that factual differences distinguish the instant case from cases such as Honorbilt Products v. Commissioner, 3 Cir., 119 F.2d 797; United States v. H. T. Poindexter & Sons Mercantile Co., 8 Cir., 128 F.2d 992; Lee Rubber & Tire Corporation v. United States, D.C., 49 F.Supp. 6. And we believe that Arkwright has adequately met the test (when that test is reasonably interpreted) set out in Cudahy Packing Co. v. United States, 7 Cir., 126 F.2d 429, 431.

The judgment of the District Court is affirmed.

Affirmed.