*Decision will be entered for the petitioner.*

CALDWELL SUGARS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 415 P. T. Promulgated June 15, 1943.

*Carl J. Batter, Esq.*, for the petitioner.
*Royal E. Maiden, Jr., Esq.*, for the respondent.

**OPINION.**

STERNHAGEN, *Judge:* It has been stipulated that the statutory average margin during the tax period was $.011861 per pound (without regarding benefit payments as reduction of cost) or $.016000 per pound (if the benefit payments are treated as reduction of cost), and was $.011538 per pound in the statutory before-and-after period. Thus the average margin for the tax period was at least $.000323 per pound greater than in the before-and-after period. This is "prima-facie evidence that none of the burden of such amount [the processing tax paid] was borne by the claimant but that it was shifted to others." Sec. 907 (a), Revenue Act of 1936.

The claimant concedes that $2,737.12 of taxes were added by it to the price shown on bills to its customers and that it is not entitled to the refund of such taxes, as they were clearly shifted. As to the $25,926.43 not separately stated on bills rendered to customers, claimant says that the burden of the tax was borne by it and not shifted to others. Its argument is based upon the declared design and purported administration of the Jones-Costigan Act and the general circumstances affecting the sugar industry before, during, and after the tax period, and not upon specific facts of any transaction or of the operation of claimant's business as a whole. The statute, however, precludes a finding based upon such general inferences and requires evidence of

concrete facts. This is not satisfied by proof of difficulty in marshaling the evidence. *Burnet* v. *Houston*, 283 U. S. 223. "When particular facts control the decision they must be shown." *Anniston Manufacturing Co.* v. *Davis*, 301 U. S. 337. Where the spread between margins is against the claimant, it "must show that the spread was not owing to his shifting the tax." *E. Regensburg & Sons* v. *Helvering*, 130 Fed. (2d) 507 (C. C. A., 2d Cir.). "It must not only be demonstrated that the tax has neither been shifted forward in the sale price nor backward in the cost price, but also that it has not been shifted 'in any manner whatsoever.'" *Colonial Milling Co.* v. *Commissioner*, 132 Fed. (2d) 505 (C. C. A., 6th Cir.).

A tax amounting to 53½ cents per 100 pounds was imposed beginning June 8, 1934. At the same time wholesale prices of refined sugar increased generally about 55 cents per 100 pounds. The claimant, which did not sell to the ultimate consumer but to wholesalers and dealers, fixed its prices before, during, and after the tax period at a differential below the price quoted by the American Sugar Refining Co. The differential ranged from 20 cents to 45 cents, depending upon the quality of the claimant's product, its sugar being inferior to that of American. The evidence fails to show the exact prices quoted by American or charged by the claimant at any time during the entire period involved except as shown by several confirmation orders dated in October and November 1934. Such orders disclose that the price of American used as a basis was higher than the average October and November 1934 New York wholesale price per pound of refined sugar including the tax. During the tax period it was not economically impossible for the claimant to shift the tax burden to its customers, for it did this, as it admits, as to $2,737.12 by adding this tax to the price as a separate item. Logically it is reasonable to suppose that the claimant probably was also able to pass on the remaining tax to its other customers. At least we can reach no assured conclusion that it did not, or that the sales involving the $2,737.12 were exceptional rather than typical. The claimant has failed to overcome the prima facie effect of the unfavorable comparison of the margins and has failed to prove that it bore the burden of the tax and did not shift it by any means whatever to those to whom it sold its products.

The argument that it was the design of the sugar amendment to the Agricultural Adjustment Act not to pass the tax on to the ultimate consumer does not avail claimant, for it did not sell to the ultimate consumer. Even so, the evidence shows that the average retail price for the two years before and six months after the tax period was 5.357 cents per pound of refined sugar as compared with the price in the tax period of 5.647 cents per pound. The quota system remained in effect after the invalidation of the tax and the prospect of the application of a quota system had a stimulating effect on prices prior to the

enactment of the sugar amendment, so that the increase may have been to some extent due to the tax.

Whether the burden of the tax was shifted to others in the cost to claimant of its raw material or its cost of manufacture need not be considered, since the possibility that it may have shifted the burden to its purchasers is enough to require a denial of the refund claimed. It is also unnecessary to enter upon the question whether the benefit payments received by the claimant serve to affect its cost and thus become a factor in measuring the margin, for the margin is in either event greater in the tax period than in the before-and-after period.

The claimant also uses the argument that it did not and could not pass the tax on to the growers of sugar cane since the Secretary of Agriculture fixed the prices to producers under the sugar cane production adjustment contracts and since he failed to make any compensating payments under section 8, paragraph 7, of the Agricultural Adjustment Act to growers of sugar cane from whom claimant purchased cane. This argument is based upon the presumption that the Secretary of Agriculture administered the sugar amendment to prevent the passing back of the tax to the producer. This presumption is not the equivalent of proof of substantive facts. *United States* v. *Ross*, 92 U. S. 281, 284. No evidence was submitted as to cost of raw material or cost of manufacturing. It is therefore impossible to determine what effect, if any, the incidence of the tax or other circumstances had upon them.

The claimant further argues that the period from January 7, 1936, to August 31, 1937, should be substituted for the base period established by the statute for comparison of margin with the tax period. This substitution for the statutory period would establish a spread of margin favorable to claimant. There is no warrant for departing from the requirement of the statute in this respect. *Colonial Milling Co.* v. *Commissioner, supra.*

*Decision will be entered for the respondent.*