Laurence M. Williams, as Liquidator of Sterling Sugars, Inc., formerly a Louisiana Corporation, and Sterling Sugars Sales Corp. v. Commissioner. Laurence M. Williams, as Liquidator of Sterling Sugars, Inc., formerly a Louisiana Corporation v. Commissioner.
Williams v. Commissioner
Docket Nos. 348 P.T. and 349 P.T.
United States Tax Court
1943 Tax Ct. Memo LEXIS 113; 2 T.C.M. (CCH) 787; T.C.M. (RIA) 44019; September 18, 1943
*113 C. J. Batter, Esq., and R. E. Milling, Jr., Esq., for the petitioners. Royal E. Maiden, Jr., Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: These two proceedings involve claims for refund of $652,503.50 in processing taxes paid under provisions of the Agricultural Adjustment Act as amended. [1] The claims were originally filed with the United States Processing Tax Board of Review and consolidated by that Board. Subsequently evidence was taken by that Board. Briefs were filed by the claimants and the government but, prior to final decision by the Board, jurisdiction with respect to such claims was transferred to this Court by section 510 of the Revenue Act of 1942. Upon consideration of the evidence, the briefs of counsel and the entire record, we make the following Findings of Fact Sterling Sugars, Inc., (hereinafter referred to as "Processing Corporation") was organized under the laws of the State of Louisiana prior to 1932 and was, from the date of its organization until sometime in 1937, engaged in growing, purchasing and grinding sugar cane; producing raw sugar from cane *114 which it grew and from cane which it purchased; buying raw sugar and refining raw sugar, which it produced and which it purchased, into direct consumption sugar; and in the sale of such sugar together with molasses and bagasse derived during the course of its grinding and refining operations. Sometime in 1937 a corporation of the same name, Sterling Sugars, Inc., was organized under the laws of the State of Delaware, which corporation took over the assets and assumed all of the liabilities of the Processing Corporation. The petitioner, Sterling Sugars Sales Corporation, acted merely as a selling agent for sugar refined by the Processing Corporation and was not a processor of sugar within the meaning of the Agricultural Adjustment Act as amended and paid no part of the processing tax, the refund of which is here contested. The petitioner, Laurence M. Williams, is the liquidator of Processing Corporation, having been elected as such by resolution of the shareholders adopted December 22, 1939 pursuant to section 54 and other sections of Act 250 of the Legislature of the State of Louisiana for 1928 as amended. The Processing Corporation paid the whole of the processing tax involved in *115 these proceedings in the amount of $652,503.50. The bulk of direct consumption sugar produced by the Processing Corporation resulted from the processing of raw sugar which it purchased from cane growers in Louisiana and in Cuba. Of the total quantity of sugar produced by it during the tax period, approximately 16 per cent was from raw sugar made by it from sugar cane and the balance of approximately 84 per cent was made from the raw sugar which it purchased. Of the 16 per cent of direct consumption sugar produced by it from cane during the tax period approximately 5 1/2 per cent was from cane grown on its own plantations and approximately 10 1/2 per cent from cane purchased from other growers of cane which was ground in its mill. The cane that was purchased was brought at the farmer's point of loading in the Processing Corporation's general territory, on its weight and a sucrose analysis or test which had been prescribed by the Secretary of Agriculture at a price based upon the New Orleans market for raw sugar, and in competition with 8 other mills as to fees paid to the grower for loading and trucking the cane. All of the Processing Corporation's purchases of raw sugar were made *116 through the port of New Orleans in open competition with other refiners, and the prices carried a slight premium over those existing upon the New York market. Freight charges were paid for the shipment of the raw sugar from New Orleans to Franklin, Louisiana, where the refinery of the Processing Corporation was located. By reason of the seasonal character of sugar cane growing, the grinding factory operated only three months in each year during the harvesting season. The refinery itself operated intermittently, the practice being to run the refinery continuously until all its available storage facilities were filled. Operations would be resumed when the available supplies were near the point of exhaustion. The Processing Corporation produced bulk sugar only and was not engaged in the carton or specialty package business. The bulk sugar was sold either in 100-pound sacks or in 100-pound sacks containing units of 10-pound or 5-pound sacks, the smaller units bringing a price differential over the bulk units of 100-pound packages in a single sack. Such premium, however, was less than the cost of the extra sacks required. The standard brand name of sugar produced by the Processing Corporation *117 was "Sterling Quality". It also sold sugar under the trade name of "Arlington" which sugar sold at a discount of 10 cents per unit of 100 pounds under its standard brand. The "Arlington" brand was sold to meet competitive conditions, although it was, in all respects, similar to sugar sold under the name of "Sterling Quality". Of the total amount of refined sugar produced during the tax period, approximately 92 per cent was sold under the name of "Sterling Quality" and approximately 8 per cent was sold under the name of "Arlington". Due to marketing and geographical conditions, the Processing Corporation's selling territory was limited to the Mississippi Valley. All of the sugar of Processing Corporation was sold by Sterling Sugars Sales Corporation, one of the petitioners, through independent brokers on a commission basis. During the first part of the tax period, petitioner's sugar was sold at a discount of 10 cents per 100 pounds under the standard quotations of the big refiners and 5 cents per 100 pounds under such quotations in 1935. Refined sugar is sold on so-called market moves. That is, customers are notified of anticipated changes in the selling price of refined sugar so *118 that such customers, particularly where an advance in price is in prospect, may satisfy their requirements before the price advance takes effect. Such requirements usually extend over a period of 30 days although such period is often extended. The Processing Corporation maintained large stocks of refined sugar at warehouses in Memphis, Tennessee, Louisville, Kentucky, Lexington, Ohio, and Portsmouth, Ohio, where refined sugar could be stored so as to enable the refinery to operate for longer continuous periods than would otherwise be possible. By shipping in barge lots, it was hoped that the freight saving would compensate for the warehouse charges. The period of time between the sale of sugar and its ultimate receipt ranged from a period of 30 days to more than 120 days. The Processing Corporation guaranteed its customers against both a price decline in its own price for sugar and in price declines of its competitors. This practice was effective on all sugar unpaid for at the time of the decline. If a decline is followed by an advance the customer may still purchase its sugar at the lower price. Most sales are made subject to withdrawal from the warehouse within 30 days and, on *119 occasion, sugar may be in transit the same length of time. Provisions of sale provide that payment on the sales of 100 units or less is due in 7 days, and any decline in price from the date of the order until 7 days after the arrival of the sugar at its destination may be deducted from the remittance. On sales running from 101 to 200 units, payment dates are one half in 7 days and one-half in 14 days. On sales running from 201 to 300 units, payment dates are one-third each 7 days. On sales running from 301 to 400 units payments are due one-fourth each 7 days. No payments were made to cane growers under the provisions of paragraph 7, section 8 of the Agricultural Adjustment Act, as amended. The tax period of the Processing Corporation is the period commencing June 8, 1934 and ending October 31, 1935, inclusive; the period for the computation of margins before and after the tax period is the period June 8, 1932 to June 7, 1934, inclusive, and the period from February 1, 1936 to July 31, 1936, inclusive. During the tax period the gross sales value of all articles processed by the Processing Corporation from the commodity was $5,950,149.78. The cost of the commodity processed was $3,963,606.03. *120 The total processing tax paid was $652,503.50. The total number of units of the commodity processed, with respect to which the tax was paid, was 130,500,694 pounds. The average margin per unit of the commodity processed during the tax period was $.01022. During the period before and after the tax the gross sales value of all articles processed by the Processing Corporation from the commodity was $9,166,557.28. The cost of the commodity processed was $7,156,004.66. The total number of units of the commodity processed was 223,620,913 pounds. The average margin per unit of the commodity processed during the period before and after the tax was $.00899. On June 21, 1937 a joint claim for refund marked "tentative return" was filed by the Processing Corporation and Sterling Sugars Sales Corporation under the provision of Title VII of the Revenue Act of 1936 seeking the refund of processing taxes paid under the Agricultural Adjustment Act as amended in the amount of $652,503.50. The joint claim was signed by both corporations by J. D. Perilloux, auditor. Following this the respondent received from the Processing Corporation a letter dated January 12, 1938 which stated, in part, as follows: *121 The schedules enclosed show that the total Processing Tax paid on production was $652,503.50 and that the Processing Tax collected was $651,825.27, leaving a balance of $678.23 Processing Tax paid which was not collected from customers. Although our Claim on Form 79 No. F-1441 was in the amount of $652,503.50, the schedules reveal that the actual amount to be refunded under the claim is only $678.23. If additional statements are required, won't you kindly so advise us and at the same time grant us an extension of ninety days within which to compile and forward the statements desired. On March 22, 1938 the Processing Corporation and Sterling Sugars Sales Corporation received from the respondent as a refund on their adjusted joint claim the sum of $678.23. On December 27, 1939 a joint claim for refund marked "final" was filed by the Processing Corporation and Sterling Sugars Sales Corporation under the provisions of Title VII of the Revenue Act of 1936 seeking the refund of processing taxes paid on the processing of sugar under the Agricultural Adjustment Act as amended, in the amount of $652,424.05. This claim was signed by the Processing Corporation over the signature of Laurence *122 M. Williams, Liquidator. On August 17, 1940 respondent disallowed in full the joint claim for refund aforesaid as amended and on November 12, 1940 Laurence M. Williams, as Liquidator of the Processing Corporation, and Sterling Sugars Sales Corporation, filed with the United States Processing Tax Board of Review a joint petition for review, said petition bearing Docket PTBR No. 348. On December 27, 1939 Laurence M. Williams, as Liquidator of the Processing Corporation, filed a claim for refund of processing taxes paid on the processing of sugar under the provisions of the Agricultural Adjustment Act as amended, in the amount of $652,424.05 and on August 17, 1940 respondent disallowed in full such claim and on November 12, 1940 the claimant aforesaid filed a petition for review with the United States Processing Tax Board of Review, such petition being assigned Docket PTBR No. 349. The identical processing tax payments and the identical quantity of sugar cane and/or raw sugar upon the processing of which the tax was paid are involved in the foregoing claims and the petitions for review filed and the proceedings therein were, by order of the United States Processing Tax Board of Review, *123 consolidated for hearing on the merits. Prior to June 8, 1934, the date of the imposition of the processing tax on sugar, the Processing Corporation revised its contract forms covering its sales of sugar to include a clause providing that in the event the tax was imposed, the price of all sugar at that time undelivered should be increased by 107 1/2 per cent of the amount of such tax if computed upon a poundage basis and, if not determinable on the basis of poundage, then the price should be increased by the amount by which the seller's cost per pound of refined sugar thereafter delivered would be increased by reason of such tax. This tax clause continued in use on both contracts and invoices of the Processing Corporation throughout the tax period. In May 1934 the Processing Corporation, through its sales agent, Sterling Sugars Sales Corporation, notified its various sales agents to explain to their customers that all purchases of sugar made from it after June 8, 1934 would carry the tax to be imposed that day. The processing tax on sugar at the rate of 53 1/2 cents per 100 pounds of refined sugar was made effective June 8, 1934 and on all the markets for sugar the selling price *124 was immediately, on that day, increased by 55 cents per 100 pounds. This increase was because of the imposition on that date of the processing tax and, when the customary trade discount of 2 per cent had been allowed on the invoice price, permitted a tax recoupment slightly in excess of the amount of the tax. The Processing Corporation, together with other producers of sugar, increased on this date its prices to customers by the amount of 55 cents per 100 pounds and the fluctuation of sugar prices on the market after that date was from the higher level thus set. On August 8, 1934 the Processing Corporation, through its assistant general manager, wrote a letter to the Acting Collector of Internal Revenue at New Orleans, Louisiana, which stated as follows: We have previously reported our production of sugar during the period of June 8th-July 7th, inclusive. You will find enclosed herewith our report of production from the first moment of July 8th to date. As was necessary on our other reports we request that we be allowed to withhold payment of processing tax for the full limit of the law, i.e., 180 days, unless the sugar is sold and the tax collected prior to that time. We haven't *125 the necessary funds to advance this money to our Government and can only pay this tax when it has been collected from our customers. In another letter addressed to the Acting Collector under date of September 27, 1934 by the Processing Corporation, the following statement was made: Should your Washington office demand payment to you each month as processing is reported we would be in the position of advancing money to our Government which had not as yet been collected for their account and would impose upon us an undue hardship. On August 31, 1936 the petitioner, Sterling Sugars Sales Corporation, as agent for the Processing Corporation, instructed one of its sales agents in the field to advise customers, who requested credit upon invoice prices of the amount of the tax, that it had no responsibility to them to refund the tax which they had paid by its inclusion in the price charged since the amount of the tax thus paid had been remitted by the Processing Corporation to the government, but that if such customers could show that they had not, in reselling the sugar, passed on the amount of this tax to their customers, they should file claim with the Federal government for its refund. *126 On February 19, 1936 the Processing Corporation, through its treasurer and assistant general manager, advised the Journal of Commerce and Commercial of New York that it was issuing affidavits to its customers in order that they might file claims for refund of processing taxes paid by it with respect to sugar purchased by them. No part of the burden of the amount paid or collected as processing tax for the tax period on its processing of sugar was borne by the Processing Corporation but such burden was shifted to its customers in its entirety. Opinion In so far as the Sterling Sugars Sales Corporation is concerned it is not quite clear why it has been joined here as a claimant for refund. It is not a processing corporation within the purview of the Agricultural Adjustment Act as amended. See supra. It paid no part of the tax here involved. No fact or circumstance is revealed indicating an interest on its part basing a claim for refund and counsel for the petitioners admit that the benefits of any claim, if established, run only to the Processing Corporation, Sterling Sugars, Inc. We have found as a fact, upon the evidence submitted, that the margin of the Processing Corporation *127 during the tax period exceeded its margin during the margin computation period before and after the tax period. See Revenue Act of 1936, section 907. Upon this finding the presumption arises, under section 907 (a) of such act, that none of the burden of the processing tax was borne by this claimant but that it was shifted to others. To overcome this presumption thus supported, the claimant must establish affirmatively by the evidence that the margin spread against it was not caused by its shifting of the tax burden. E. Regensburg & Sons v. Helvering, 130 Fed. (2d) 507; Colonial Milling Co. v. Commissioner, 132 Fed. (2d) 505; Caldwell Sugars, Inc., 2 T.C. 105. This has not been done. We think it clear from the evidence that this presumption not only has not been overcome but, on the other hand, the facts indicate that this claimant absorbed none of the tax but passed this burden on to its customers. The principal argument of this petitioner is that, during the tax period, it sustained losses rather than made profits from the sale of its sugar. The alleged existence of this fact is then *128 relied upon as proof of its contention that it absorbed the tax and did not pass it on. We are not convinced from the record, however, that petitioner actually sustained losses as claimed. But even had such fact been established it would not suffice as proof of this petitioner's contention. Cf. Caldwell Sugars, Inc., supra.We are concerned with the fact as to whether or not the burden of the tax was actually absorbed or passed on. If, as respondent contends, the tax was passed on to customers this petitioner might still have sustained a loss from its operations. We hold that neither one of the petitioners is entitled to refund of any portion of the processing taxes paid. Decisions will be entered for the respondent. Footnotes
1. Agricultural Adjustment Act, 48 St. 32, amended 48 St. 670↩.